EX PARTE EDWARD WILLIAMS, Petitioner.—139 S. W. (2d) 485.

Division Two, May 4, 1940.

*Emmet Golden* and *Rene J. Lusser* for petitioner.

*Edgar H. Wayman* and *Oliver Senti* for respondents.

TIPTON, J.—*Habeas Corpus.* The petitioner was arrested by the police of the City of St. Louis, Missouri, for violation of Ordinance

No. 40996 of that city. This ordinance seeks to regulate solicitations for charitable, patriotic or philanthropic purposes in that city; it provides for the creation and functioning of a Charity Solicitations Commission; and it makes it unlawful to solicit funds without first securing a permit from the commission. At the time the petitioner was arrested he was soliciting funds for the St. Louis Volunteer Children's Free Feeding Station, which had made an application for a permit and was denied.

The first point made in the petitioner's brief is that "Ordinance No. 40996 is a prohibitory ordinance and therefore, illegal, since the charter of the City of St. Louis does not expressly give the city the right to prohibit the operation of a charitable institution, or the solicitation of funds therefor. The ordinance therefore is in violation of, and in contravention to, Article II, Sections 4 and 30, of the Constitution of Missouri."

This point necessarily raises two questions; the first is: Does the State have the power to regulate the solicitations of funds for charitable, patriotic or philanthropic purposes? If this question is answered in the affirmative, then the second question is: Has the State delegated to the City of St. Louis that power?

The petitioner contends that the State does not possess such power because of Sections 4 and 30 of Article II of our State Constitution. Section 4 reads as follows: "That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principle office of government, and that when government does not confer this security, it fails of its chief design." Section 30 deals with the due process clause.

On the other hand, the city contends that the police power of the State gives it the right to enact such regulations. We have never ruled the exact question presented, but it has been ruled by other jurisdictions.

In Ex parte White, 56 Okla. Cr. 418, 41 Pac. (2d) 488, 1. c. 490, the Court of Criminal Appeals of Oklahoma said:

"The city has authority under the exercise of its police power to determine whether or not there shall be restrictions on soliciting by unscrupulous persons or for unworthy causes or for fraudulent purposes. That solicitations of contributions under the guise of charitable and benevolent purposes is grossly abused is a matter of common knowledge. Certainly the solicitation of contributions in good faith for worthy purposes should not be denied, but somewhere should be lodged the power to determine within reasonable limits the worthy from the unworthy. The ordinance here has put that power in the hands of a board probably as well equipped to determine that question as any that could be selected."

In the case of Commonwealth v. McDermott, 296 Pa. 299, 1. c. 306, the Supreme Court of Pennsylvania said:

" 'What business or occupation so far affects the public welfare and good order as to require to be licensed is a matter of legislative consideration and control, which, when exercised in good faith, is outside the jurisdiction of the courts.' However, the Legislature when enacting the law of 1925 recognized the fact that beyond the list of exemptions there might be and undoubtedly are many organizations undertaking work in the name of charity which a due regard for public welfare requires to be licensed. These obviously would be unknown both to the general public and to the department of public welfare. They might be of excellent repute and should have no objection to acquainting the authorities with their plans and intentions. But, as is evident by the instance before us, honest purposes and lawful methods do not always characterize enterprises put on foot seemingly in behalf of charity. Even with numerous regulative state and local laws in existence, it is surprising how many operations are carried on by persons and associations who, secreting their activities under the guise of benevolent purposes, succeed in cheating and defrauding a generous public. It is in fact amazing how profitable the fraudulent schemes and practices are to people who manipulate them; and we have a most signal instance of this common evil in the fruitful results of the operations of the three defendants in the case before us."

In the case of State v. Hundley et al., 195 N. C. 377, 142 S. E. 330, 1. c. 332, in ruling on an ordinance of the City of Charlotte regulating the solicitation of funds for charity, the Supreme Court of North Carolina said:

"The contention that the ordinance in question deprives the defendants and the American Rescue Workers, Inc., of their religious liberties, or that it obstructs them in the pursuit of happiness, manifestly, we think, cannot be sustained."

In McQuillin on Municipal Corporations (2 Ed.), section 791, page 957, we find:

"The occupation of soliciting for charities is subject to the police power so far as relates to a reasonable supervision over the persons so engaged and for the application and use of the contributions received to the purposes intended, in order to prevent unscrupulous persons from obtaining money or other things under the pretense that they are to be applied to charity, and to prevent the wrongful diversion of such funds to other uses, or to secure them from waste. Measures reasonably tending to these ends are unquestionably valid. On the other hand, since every person has the right to solicit contributions for charity if he acts in good faith and makes an honest application of the funds so obtained, regulations of this character which are arbitrary and which assume to say what person or what

institution may or may not engage in charitable work are objectionable, as a denial of a common right. The police power cannot be used in such an arbitrary, unreasonable and oppressive manner.''

However, the Supreme Court of California held invalid an ordinance similar to the St. Louis ordinance in the case of Ex parte Dart, 172 Cal. 47, 155 Pac. 63, L. R. A. 1916D, 905, Ann. Cas. 1917D, 1127. In that case the charities commission of the City of Los Angeles demanded that the Salvation Army, as a condition precedent to obtaining a permit, should be governed by a local board, residents of that city, that all its property should be conveyed to its local board, and that all its offerings and contributions should be used for local purposes and none used by the general officers. However, the court expressly held that the soliciting of contributions for charitable purposes might be regulated, providing reasonable supervision of the person or persons engaged in the soliciting and restrictions on the use of the contributions received to prevent unscrupulous persons from obtaining money and the wrongful conversion of such funds.

In Cooley on Constitutional Limitations (8 Ed.), page 1225, we find:

'' 'This police power of the State,' says another eminent judge, 'extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State. According to the maxim, *Sic utere tuo ut alienum non laedas,* which, being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others.' And again: [By this] 'general police power of the State, persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the State; of the perfect right in the Legislature to do which, no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned.' ''

■ Since the police power extends to all things which bear a substantial relation to the public health, safety and welfare, we therefore hold that the State has the power to regulate the solicitation of funds for charitable, patriotic and philanthropic purposes, without violation of Section 4 of Article II of the State Constitution.

■ Nor do we think that the due process clause of our Constitution is violated, even if the administration of the act is conducted by a ministerial board. Due process does not necessarily mean judicial process. It not infrequently happens that a full discharge of their duties compels a board whose officers are of a purely ministerial character, to consider and determine questions of a legal nature. Nor is the right of appeal essential to due process of law. [Reetz v. Michigan, 188 U. S. 505, 47 L. Ed. 563.]

Since the State has the power to regulate the solicitation of funds

for charity, the next question for determination is: Has the State conferred that power on the City of St. Louis?

A municipal corporation possesses and can exercise only those powers granted in express words, those necessarily or fairly implied in or incident to the power expressly granted, and those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensible. [State ex rel. Penrose Inv. Co. v. McKelvey, 301 Mo. 1, 256, S. W. 474.] "The extent of this (police) power of a city thus derived is subject to, and dependent upon, the limitations of its charter. The city is a creature of the State; and, before it can exercise a particular police power, it must fairly be included in the grant of powers by its charter." [City of St. Louis v. King, 226 Mo. 334, l. c. 345, 126 S. W. 495, 27 L. R. A. (N. S.) 608, 136 Am. St. Rep. 643.]

The City of St Louis, by its charter, is authorized "to license and regulate all persons, firms, corporations, companies and associations engaged in any business, occupation, calling, profession or trade" (Article I, Sec. 1, Cl. 23); "to define and prohibit, abate, suppress and prevent or license and regulate all acts, practices, conduct, business, occupations, callings, trades, uses of property, and all other things whatsoever detrimental or liable to be detrimental to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the city, and all nuisances and causes thereof" (Article I, Sec. 1, Cl. 25); "to prescribe limits within which business, occupations and practices liable to be nuisances or detrimental to the health, morals, security, or general welfare of the people may lawfully be established, conducted or maintained" (Article I, Sec. 1, Cl. 26); and "to do all things whatsoever expedient for promoting or maintaining the comfort, education, morals, peace, government, health, welfare, trade, commerce or manufactures of the city or its inhabitants" (Article I, Sec. 1, Cl. 33).

While there is no express authority to be found in the charter authorizing the city to regulate solicitors of funds for charitable organizations, eo nomine, this is unnecessary. All that is necessary is that the ordinance in question be embraced within the general powers granted by the charter. [St. Louis Gunning Adv. Co. v. St. Louis, 235 Mo. 99, 137 S. W. 929; City of St. Louis v. Baskowitz, 273 Mo. 543, 201 S. W. 870.] It cannot be doubted that under the charter provisions, supra, the City of St. Louis has general authority to regulate the solicitation of funds for charity, it clearly appearing that such solicitations are essentially an occupation, or calling, and as such are subject to be licensed and regulated under the powers granted by the charter.

We, therefore, hold that the State delegated to the City of St. Louis the power and authority to enact the ordinance in question.

Petitioner next contends that the ordinance is void because

it constitutes an undue, unauthorized and illegal delegation of legislative powers to the Charity Solicitations Commission when the legislative power of the city is vested in the Board of Aldermen. (Article IV, Section 1 of the charter.)

In substance, the provisions of Ordinance No. 40996 are as follows:

Section 1 makes it unlawful to solicit funds for charitable, religious, patriotic or philanthropic purposes without first having obtained a permit from the Charity Solicitations Commission. It exempts those organizations which operate without profit and where the solicitation is conducted among its members or where it is in the form of collections or contributions at the regular services of any church, religious society, lodge, benevolent order or fraternity, or similar organizations.

Section 2 provides for the appointment of a nine member board. The commission is authorized to elect its own officers, determine its time and place of meeting, and, except as otherwise provided, to adopt such rules and regulations as in its own judgment shall be necessary to effectuate the purposes of the ordinance. A majority of the commission is to constitute a quorum and it is empowered to issue and revoke permits as in other portions of the ordinance provided, to summon witnesses, take testimony, direct investigations, conduct hearings, and to do and perform all other acts which may be necessary and proper within the scope of its duties and functions.

Section 3 provides for a verified application showing the name of the organization applying for the permit, its address and headquarters, the names and addresses of its principal officers and manager, the purpose for which the solicitation is made, the name of the person by whom the receipts shall be disbursed, the name and address of the person in direct charge of conducting the solicitation, an outline of the methods to be used in conducting the solicitations, the beginning and ending of the period of such solicitation, the amount or wages, fees, commissions, expenses or emoluments to be paid to anyone in connection with the solicitation, to whom paid and the amount thereof, a financial statement for the last fiscal year including the amount raised and the cost of raising it and its final disposition, a statement of the character of work being done by the organization within the city, such other information as may be required by the commission in order for it to fully determine the kind and character of the proposed solicitation, and whether such a solicitation is in the interest of and not inimical to the public welfare, a statement that the cost of raising funds will not exceed 25 per cent thereof, and the statement that the permit will not be used or represented as an endorsement by the commission, its members or the city.

Section 4 provides that upon receipt of the application, the commission shall make or cause to be made such investigation as it shall deem necessary, and if satisfied that the solicitation is for a bona fide

charitable, religious, patriotic or philanthropic purpose and is prompted solely by a desire to finance the cause in question, that the persons in charge of the solicitation are responsible and reliable persons, and the costs of raising the funds shall be reasonable and in no event to exceed 25 per cent of the amount raised, the commission shall certify such facts to the Director of Public Welfare who shall thereupon and upon the payment of the three dollars ($3.00) issue the applicant a three months' permit; that the commission may, from time to time, require such reports from the permit holder as shall be necessary to· the proper administration of the ordinance; that permits may be extended for additional periods and facsimile copies of permits shall be furnished for each solicitor at a cost of one cent each.

Section 5 prohibits the permit from being used as an endorsement by the commission or the city.

Section 6 authorizes the commission to revoke permits upon receipt of information or upon its own investigation, after a hearing, upon notice to the holder of a permit.

Section 7 provides a penalty for the violation of the ordinance.

Section 8 is a saving clause providing that the unconstitutionality of any part of the ordinance shall not affect the validity of the other parts.

We will not prolong this opinion by attempting to discuss the numerous decisions cited by counsel, but we think the true rule of law is stated in the case of State ex rel. Mackey v. Hyde, 315 Mo. 681, 286 S. W. 363, l. c. 366, where we said:

"As the language used in investing the Superintendent of Insurance with power to license insurance brokers is not mandatory in its terms, but permissive only, it carries with it the right to exercise discretion—not arbitrarily, but reasonably. [Samuels v. Couzens, 215 Mich. 328, 183 N. W. 925; 25 Cyc. 622, note 21.] But relator says that if such language be given this its plain and obvious meaning, it renders the statute unconstitutional, in that it attempts to vest in the superintendent an unregulated discretion. It is true that no rules of conduct are prescribed to govern the action of the superintendent, but that fact does not necessarily render the statute invalid.

"The validity of a grant of discretion depends largely upon the nature of the business or thing with respect to which it is to be exercised. For example, it is well established that in order for a statute or ordinance to be valid, which places restrictions upon lawful conduct or lawful business, in themselves harmless, it must specify the rules and conditions to be observed in such conduct or business, and must admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions. [Monticello v. Bates, 169 Ky. 258, 183 S. W. 555; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220.]

"On the other hand, it is equally well settled that it is not neces-

sary that statutes or ordinances prescribe a rule of action where they deal with situations which require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule; *or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare; or where personal fitness is a factor to be taken into consideration."* (Italics ours.)

We have already ruled that this ordinance is a police measure; therefore, there is no delegation of legislative powers to the Charity Commission.

■ The petitioner contends that this ordinance is void for the reason that it constitutes an attempt to use the police power in an arbitrary, unreasonable and oppressive manner by clothing the Charity Commission with uncontrolled, unlimited, unregulated and arbitrary powers to forbid and prohibit any person or persons from soliciting for charity, regardless of his personal worth or fitness, at their ungoverned will or whimsical pleasure.

However, the petitioner overlooks the fact that when the Charity Commission finds that the applicant has complied with Sections 3 and 4 of the ordinance, it is its duty to issue the permit.

"A legislative body cannot delegate its authority, but alone must exercise its legislative functions. [12 C. J. 839; 6 R. C. L. 175.] It may empower certain officers, boards, and commissions to carry out in detail the legislative purposes and promulgate rules by which to put in force legislative regulations. It may provide a regulation in general terms, and may define certain areas within which certain regulations may be imposed, and it may empower a board or a council to ascertain the facts as to whether an individual or property affected come within the general regulation or within the designated area." [Cavanaugh v. Gerk, 313 Mo. 375, 280 S. W. 51, 1. c. 52.]

Although this ordinance does empower the commission in general terms to ascertain if the applicant comes within its specifications, it is not a delegation of legislative authority, and, therefore, does not vest arbitrary or capricious powers in the Charity Commission.

The petitioner contends the ordinance is void because it prohibits the solicitation of funds by mail and telephone. The city does not contend that it has the power to seize or otherwise interfere with the United States mail, but it does contend that it has a right to regulate the solicitation of funds for charity, regardless of the method used.

In the case of In re Phoedovius, 177 Cal. 238, a similar contention was raised as to the validity of a statute prohibiting the shipping of fish from the State by parcel post. In holding the act valid, the court ruled that although the State could not seize or otherwise interfere with the shipment while it was in possession of the postal authorities, yet the act was an appropriate means of preventing fish

being shipped outside the State. It is also true that the regulation of telephones is under the supervision of the Public Service Commission but this supervision is limited to service rendered by the telephone exchanges and the rates charged for this service. The Public Service Commission has no control over conversation transmitted by the telephone. We overrule these contentions.

From what we have said, it follows that the petitioner should be remanded to the marshal of the City of St. Louis. It is so ordered. All concur.