**MILGRAM FOOD STORES, INC.,**
a Corporation, Respondent,

v.

**Hollis M. KETCHUM, Supervisor, Department of Liquor Control, State of Missouri, Appellant.**

No. 50159.

Supreme Court of Missouri,

Division No. 1.

July 13, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 14, 1964.

A. E. Margolin, F. Philip Kirwan, Harry H. Terte, Solbert M. Wasserstrom, Kansas City, for respondent, Margolin & Kirwan, Kansas City, of counsel.

Thomas F. Eagleton, Atty. Gen., Jeremiah D. Finnegan, Asst. Atty. Gen., Jefferson City, for appellant.

HYDE, Presiding Judge.

Licenses of respondent were suspended for a 25-day period by the State Supervisor of Liquor Control for violation of Regulation 15(f) (5) made under authority of Sec. 311.660(6). (Statutory references are to RSMo and V.A.M.S.) As authorized by Sec. 311.700, this decision was reviewed by the Circuit Court, on application of respondent, and the court found Sec. 311.660(6) unconstitutional as "an unwarranted attempt to delegate legislative functions to the Supervisor." The court also declared the Regulation involved to be invalid and the Supervisor has appealed.

The Regulation involved, applicable to all licensees, was as follows: "(f) The term 'advertisement' as used herein includes any advertisement through the medium of radio, television, motion pictures, public address systems, newspapers or other publications or any sign or outdoor billboard or other printed or graphic matter.

"No advertising of intoxicating liquor shall contain: * * *

"(5) Any statement offering any coupon, premium, prize or rebate as an inducement to purchase intoxicating liquor."

The Supervisor's finding of violation was: "That on or about November 28, 1962, you, by an advertisement folder, sent through the United States Mail and by said advertisement being made available at all 19 of your stores, offered a premium or a prize as an inducement to purchase intoxicating liquor, to wit: in that you offered a Santa Claus bottle cover free of charge to anyone who purchased certain brands of scotch whiskey from any of your nineteen stores."

Respondent's advertisement, listing many other items, contained the following statement:

"F R E E   Santa Claus Bottle Cover!

You Must See to Believe!

EXCLUSIVE OFFER
ONLY AT MILGRAM

With Each Bottle Purchased of These 4 Internationally Famous Scotches, You Receive FREE A Santa Claus Bottle Cover, With his Bright Red Velvety Coat, And His Happy Smile Gleaming Through His Long White Whiskers!

Squeeze His Shining Red Nose and He Says 'Hello'

Choice Of:

WHITE HORSE
BLACK AND WHITE
BALLANTINE'S
JOHNNIE WALKER RED

All 100 Percent Scotch Whisky Distilled and Bottled in Scotland"

Respondent claims these cloth bottle covers, made in Japan and costing eleven

cents each, were substantially the same as Christmas wrappings customarily used in the liquor trade, many of which were claimed to be more elaborate and expensive, as well as decanters, carafes and other containers valuable for other uses, in which liquor was sold during the Christmas season. The Supervisor's refusal to admit such evidence is claimed to be erroneous and is also the basis for a claim by respondent that his action was arbitrary, capricious and unreasonable. Apparently, these things were furnished by the manufacturers and not by Missouri licensees so Regulation 15(f) (5) was not applicable to them.

Sec. 311.660 commences as follows: "The supervisor of liquor control shall have the authority to suspend or revoke for cause all such licenses; and to make the following regulations, without limiting the generality of provisions empowering the supervisor of liquor control as in this chapter set forth as to the following matters, acts and things: * * *."

Subsections 1 to 5 of Sec. 311.660 specify matters for regulations such as nature, form and capacity of liquor packages, official seal and label to be attached to liquor packages, forms for license applications and other necessary forms, terms and conditions of licenses, proof and conditions for obtaining duplicate licenses for those lost or destroyed. Subsections 7 to 9 authorize regulations for examination of books and records, subpoenas and processes, production of papers, taking testimony and for forms of labels. Subsection 10 authorizes "such other rules and regulations as are necessary and feasible for carrying out the provisions of this chapter, as are not inconsistent with this law."

Subsection 6, relied on as authority for the regulation claimed to have been violated by respondent, is as follows:

"(6) Establish rules and regulations for the conduct of the business carried on by each specific licensee under the license, and such rules and regulations if not obeyed by every licensee shall be grounds for the revocation or suspension of the license."

Respondent's contention, which was the basis of the trial court's decision, is that Sec. 311.660(6) attempts to give the Supervisor arbitrary discretion without a definite standard for his guidance and is an unwarranted attempt to delegate legislative functions and thus delegates power to make law instead of conferring authority or discretion as to its execution. Respondent relies on such cases as State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 196 S.W.2d 296; State ex rel. Continental Oil Co. v. Waddill, Mo.Sup., 318 S.W.2d 281; Automobile Club of Missouri v. City of St. Louis, Mo.Sup., 334 S.W.2d 355, 83 A.L.R.2d 612. Respondent also cites and relies on State ex rel. Anderson v. Mermis, 187 Kan. 611, 358 P.2d 936. That case involved fixing prices of liquor by the director of the State Control Board on the basis of suggested prices by licensed distributors and retailers. The court (1. c. 938) said: "This is the delegation of a fundamental duty of the legislature. Whether there should be minimum prices set upon liquor is at least debatable, and it is for the legislature to determine whether such prices are to be imposed under the police power of the state. We are of the opinion, that the police power of the state is for the legislature to apply, and we believe this delegation of the ultimate use of the police power is sufficient to render the statute unconstitutional." The court noted (1. c. 939): "Nowhere in the statute is the director given any authority over the reasonableness of the prices suggested"; and stated: "[W]e are content to believe that it is fundamental that the legislature may not leave to the discretion of administrative officials the question of the application of the police power in a certain field. This is quite different from the usual method in which the legislature determines that a danger to public welfare should be regulated under the police power, and then assigns to administrative officers the matter

of working out regulations under guide posts announced by the legislature." Thus the Kansas case involved the making of policy that the Legislature had to decide and not the delegation of authority to make rules for administration of a policy which the Legislature had decided to put into effect. In Anheuser-Busch, Inc. v. Walton, 135 Me. 57, 190 A. 297, cited by respondent, the Liquor Commission attempted to increase fees and taxes by regulations; and the court held the Legislature had not given the Commission any authority to do so.

However, respondent says our Legislature has not seen fit to declare any policy concerning advertising of intoxicating liquor except to make unlawful window displays of intoxicating liquor (Sec. 311.350) and prohibiting misrepresentation of brands sold or offer of substitution of liquor of one manufacturer for that of another (Sec. 311.360) and claims the Supervisor cannot enlarge on those provisions. Nevertheless, this does show some indication of policy to limit inducing sales by advertising, especially the prohibition of window displays. Furthermore, Regulation 15(f) (5) concerns not only advertising but stimulating sales by offers of a prize or premium in an advertisement. Regulation 15(f) does not prohibit advertising but only false, misleading, untruthful and obscene statements in advertising and this seems in accord with Sec. 311.360. It does regulate advertising in certain other respects in addition to subparagraph (5) such as prohibiting licensees' signs in dance halls, places of entertainment and restaurants that do not have licenses and prohibiting use of loud speakers or public address systems other than regular radio advertising, which is not involved in this case.

It has been held proper to regulate advertising of liquor to discourage artificial stimulation of liquor consumption; 48 C. J.S. Intoxicating Liquors § 197, p. 328; 30 Am.Jur. 549, Intoxicating Liquors, Sec. 35; Annotation, 19 A.L.R.2d 1114. In Com-

monwealth v. Anheuser-Busch, Inc., 181 Va. 678, 26 S.E.2d 94, this was done by regulations under statutory authority stated in very broad terms. The State Control Board's authority was to "make reasonable regulations, not inconsistent with this act * * * as the board shall deem necessary to carry out the purposes and provisions of this act, etc." (including prevention of specified illegal acts but not mentioning advertising). The Board's regulation permitted only licensed dealers to advertise. The court held the Board could require the billboards of Anheuser-Busch (which was unlicensed) to be taken down, saying: "The police powers of the State with reference to the control of intoxicating liquors is to be distinguished from its powers to regulate traffic in other things. It would be different if the business sought to be followed was one of the ordinary pursuits in which all persons are enabled to engage. * * * To unduly encourage, by display advertisements throughout the State, the use of alcoholic stimulants, or to stimulate that use, is highly undesirable."

The State says Sec. 311.660(6) does not vest the Supervisor with arbitrary discretion to make rules and regulations because he is limited to making rules that are reasonable and consistent with this law, saying: "This is implied in the rule making power of necessity, in order to construe the statute validly. It is also expressed in Section 311.660, RSMo," because "it may be reasonably inferred from the use of the term 'other' in subsection (10), that the limitation, that such other rules be necessary, reasonable and consistent with this law, also applies to the other nine subsections of the statute including subsection (6)." The State says Subsection (6) so construed must be thus read: "(6) Establish rules and regulations for the conduct of the business carried on by each specific licensee under the license [as are necessary and feasible (reasonable) for carrying out the provisions of this chapter, as are not inconsistent with this law] * * *."

We think this is a reasonable construction of the rule-making authority given by Sec. 311.660. As we said in Zinn v. City of Steelville, 351 Mo. 413, 173 S.W.2d 398, 402: "It is also a well established rule of construction that even if there are two possible constructions of an ordinance, or statute, the one which would uphold its validity will be adopted rather than the one which would defeat it." It was stated in Pressman v. Barnes, 209 Md. 544, 121 A.2d 816, 822: "Generally, a statute or ordinance vesting discretion in administrative officials without fixing any standards for their guidance is an unconstitutional delegation of legislative power. But we also hold, as a qualification of the general rule, that where the discretion to be exercised relates to police regulations for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, legislation delegating such discretion without such restrictions may be valid. * * * The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases." See also Davis, Administrative Law Treatise, Sec. 2.15; 1 Am. Jur.2d 899, Administrative Law, Sec. 102. We have thus stated this same rule in Ex parte Williams, 345 Mo. 1121, 139 S.W. 2d 485, 490, certiorari denied Williams v. Golden, 311 U.S. 675, 61 S.Ct. 42, 85 L.Ed. 434: " 'On the other hand, it is equally well settled that it is not necessary that statutes or ordinances prescribe a rule of action where they deal with situations which require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule; or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare; or where personal fitness is a factor to be taken into consideration.' " See also State ex rel. Ludlow v. Guffey, Mo.Sup., 306 S.W.2d 552; Kalbfell v. City of St. Louis, 357 Mo. 986, 211 S.W.2d 911, 915. Furthermore, we are considering regulation of sale of intoxicating liquor, as to which we said in State v. Wipke, 345 Mo. 283, 133 S.W.2d 354, 359: " '[T]he liquor traffic is not a lawful business, except as authorized by express legislation of the state; that no person has the natural or inherent right to engage therein; that the liquor business does not stand upon the same plane, in the eyes of the law, with other commercial occupations. It is placed under the ban of law, and it is therefore differentiated from all other occupations, and is thereby separated or removed from the natural rights, privileges, and immunities of the citizen.' " See also Pompei Winery, Inc. v. Board of Liquor Control, 167 Ohio St. 61, 146 N.E.2d 430, certiorari denied 356 U.S. 937, 78 S.Ct. 780, 2 L.Ed.2d 813.

In Ackerman v. Kogut, 117 Vt. 40, 84 A.2d 131, it was claimed there was an unconstitutional delegation of legislative power to the Liquor Control Board without setting up any standards to govern it ("to prescribe such rules and regulations * * as may be necessary to carry out the provisions of this chapter") citing the separation of powers provisions of the state constitution as respondent has cited here Art. II of our Constitution, V.A.M.S. The court ruled: "Since traffic in intoxicating liquor is a mere matter of privilege because it is of a character tending to be injurious, discretion may lawfully be delegated to public officials without prescribing definite rules of action." See also Permenter v. Younan, 159 Fla. 226, 31 So.2d 387, 389; Blackman v. Board of Liquor Control, 95 Ohio App. 177, 113 N.E.2d 893; Gatlinburg Beer Regulation Committee v. Ogle, 185 Tenn. 482, 206 S.W.2d 891; In re Kaye, 11 Alaska 556, 562; 30 Am.Jur. 629, Intoxicating

Liquors, Sec. 163; 38 Am.Jur. 29, Municipal Corporations, Sec. 340; 9 McQuillin on Municipal Corporations, 3rd Ed., 162–168, Secs. 26.66–26.67; 1 Am.Jur.2d 921, Administrative Law, Sec. 116. We will not go as far as some of the cases to hold there can be arbitrary action because the privilege to engage in the liquor traffic is involved. See 30 Am.Jur. 546, Intoxicating Liquors, Sec. 31; 16A C.J.S. Constitutional Law § 512, p. 359. Our view is that the authority of the Supervisor only is to make regulations that have a reasonable relation to the provisions of the Liquor Control Act. Our conclusion is that Regulation 15(f) (5) does have a reasonable relation to its provisions and purposes. Sec. 311.332 makes it unlawful for a wholesaler to grant a retailer "directly or indirectly, any discount, rebate, free goods, allowance or other inducement." See also Secs. 311.334–311.336 concerning required schedule of prices. As noted, Regulation 15 applies to all licensees and we consider it reasonable and in accord with the purposes and provisions of the Liquor Control Act to apply to all licensees the concept of prohibiting free goods, allowances, rebates, premiums, and other similar inducements for buying more intoxicating liquor. See Darling Apartment Co. v. Springer, 25 Del. 420, 22 A.2d 397, 137 A.L.R. 803, 807.

For these reasons, we cannot sustain respondent's further contentions that the statute and rule as interpreted and applied by the Supervisor contravene the equal protection clauses of the Missouri and United States Constitutions; that Rule 15(f) (5) is not authorized by Sec. 311.-660(6); and that Rule 15(f) (5) is unreasonable, arbitrary and capricious and bears no reasonable relation to the purpose which it allegedly sought to accomplish. As to respondent's contention that application of Rule 15(f) (5) to the Santa Claus bottle cover was arbitrary, capricious and unreasonable because "for years attractively packaged and wrapped liquor was being and had been advertised and sold for the holiday trade for the same price as that put up in ordinary bottles," there are several distinctions to consider. In the first place, it appears that customarily Christmas wrappings and unusual containers are furnished by manufacturers and the Supervisor has not undertaken to regulate that practice. Secondly, respondent's advertising was that purchasers of certain liquors were getting some additional article "free", which certainly conveyed the meaning of offering a premium or prize and we consider that to be its reasonable construction. Respondent now argues the lack of value of the article offered but it certainly did not do so in its advertisement. Furthermore, as said in 2 Am.Jur.2d 26, Administrative Law, Sec. 194: "There can be no vested right in disrespect for the law. It cannot be claimed that revocation of a license is discriminatory because of previous inaction on the part of an agency in failing and neglecting to revoke other licenses for similar violations." We further find respondent's contention that Regulation 15(f) (5) is invalid because "terms used in the rule, 'coupon, premium, prize or rebate,' are not defined," to be without merit. Certainly the words "premium" and "prize", herein involved, are well understood. See Webster's New International Dictionary, Third Edition.

The judgment is reversed and the cause remanded with directions to affirm the order of the Supervisor of Liquor Control.

All concur.