ABC SECURITY SERVICE, INC., et al.,
Appellants,

v.

Delbert MILLER, Jr., et al., Respondents.

No. 58156.

Supreme Court of Missouri,
Division No. 2.

Oct. 14, 1974.

Robert R. Schwarz, G. Carroll Stribling, Jr., Fordyce, Mayne, Hartman, Renard, Stribling & Boedeker, St. Louis, for appellants.

Robert C. McNicholas, City Counselor, John J. Fitzgibbon, Associate City Counselor, St. Louis, for respondents.

STOCKARD, Commissioner.

Appellants are eight corporations engaged in the business of providing watchmen within the City of St. Louis on a contract basis, and one individual who is a licensed watchman. They seek to have § 84.340, RSMo 1974, V.A.M.S. declared unconstitutional and void, and in the alternative to have certain regulations made pursuant to said statute declared void. By reason of the constitutional issue, appellate jurisdiction is in this court.

The case was submitted to the trial court on the pleadings and a stipulation of facts as follows:

"1. Plaintiff Corporations are corporations organized and existing under law and authorized to do business and doing business in the State of Missouri.

"2. Plaintiff Charles L. Hudson is a citizen and resident of the State of Missouri and at all times material herein was a private watchman licensed by defendants as a private watchman in the City of St. Louis.

"3. Plaintiff Corporations are engaged in the business of providing private watchmen on a contract basis to various firms, businesses and organizations in, among other places, in the City of St. Louis, Missouri.

"4. Defendants are individuals and citizens and residents of the State of Missouri, and comprise the duly appointed Board of Police Commissioners of the St. Louis Metropolitan Police Department as provided by Mo.R.S., 1969, 84.-020.

"5. Defendants, as the Board of Police Commissioners, are purportedly authorized and empowered to 'regulate and license all private watchmen, private detectives and private policemen serving or acting as such [in the City of St. Louis] . . . pursuant to Mo.R.S., 1969, 84.-340.

"6. At all times material herein, defendants pursuant to said power purportedly granted to them by said statute, have exercised and continue to exercise said power to regulate and license watchmen, and in furtherance thereof have from time to time promulgated various rules, regulations and licensing fees with respect to watchmen in the City of St. Louis, Missouri.

"7. Those watchmen whom plaintiff Corporations provide on a contract basis with their clients and plaintiff Charles L. Hudson are purportedly subject to the rules, regulations and licensing fees promulgated by the said Board while serving

or acting as private watchmen in the City of St. Louis.

"8. On and before July 17, 1970, said defendants promulgated regulations and rules with respect to the initial licensing of watchmen, providing in Rule 1.003 thereof that 'a processing fee in an amount determined by the Board must accompany the application.'

"9. On and prior to July 17, 1970, said defendants promulgated rules and regulations with respect to license renewals for watchmen, Rule 1.103 thereof providing in part: 'an appropriate renewal fee in an amount determined by the Board shall accompany all applications for renewals.'

"10. On and prior to July 17, 1970, said Board, pursuant to its Rule 1.003 and 1.-103, required processing fees for new watchmen's licenses and renewal fees as follows:

| | |
|---|---|
| Initial license fee | $10.00 |
| Renewal fee | $10.00 |
| Watchman's badge | $10.00 |

"11. At all times material herein, the watchmen furnished by plaintiff Corporations on a contract basis and plaintiff Charles L. Hudson were required by said Board of Police Commissioners to pay to said Board the applicable fees as set out in paragraph 9, above.

"12. On or about July 17, 1970, said Board, by its order, changed the schedule of and requirements for initial licensing fees and renewals to be charged, effective August 1, 1970. A schedule of said new fees is as follows:

| | |
|---|---|
| Initial processing fee | $20.00 |
| Academy training | $25.00 |
| Deposit on equipment | $15.00 |
| License reinstatement fee | $15.00 |
| Renewal fee | $10.00 |
| Transfer fee | $12.00 |
| Replacement fees: | |
| badge | $10.00 |
| license | $ 7.00 |
| I. D. card | $ 1.00 |

"13. At the instance and request of *plaintiff Corporations, defendants* agreed to stay the effectiveness of said new licensing fees until September 1, 1970, at which time said fees went into effect.

"14. Plaintiff Charles L. Hudson is a private citizen of the State of Missouri and is not a member of the St. Louis Metropolitan Police Department.

"15. Among the rules promulgated by said Board of Police Commissioners is Rule 1.001(f), that an applicant must 'not be a full-time commissioned officer of any law enforcement agency.'

"16. Full-time commissioned officers of the St. Louis Metropolitan Police Department are allowed and permitted by said department and by the Board of Police Commissioners to contract for their services on a part-time basis as watchmen in the City of St. Louis, Missouri.

"17. Defendants and the St. Louis Metropolitan Police Department do not require that said full-time commissioned officers of the St. Louis Metropolitan Police Department pay any fees whatsoever with respect to their status as part-time watchmen in the City of St. Louis.

"18. Said full-time commissioned officers of the St. Louis Metropolitan Police Department are not required by defendants to be licensed as watchmen in any manner as a prerequisite to offering their services as watchmen on a part-time basis.

"19. Defendants and the St. Louis Metropolitan Police Department have in the past and intend in the future to enforce the penal provisions of Mo.R.S., 1969, 84.340, with respect to non-officers of the St. Louis Metropolitan Police Department acting or serving as private watchmen without first having obtained a written license from defendants.

"20. Defendants and the St. Louis Metropolitan Police Department have not in the past enforced the penal provisions of

Mo.R.S., 1969, 84.340, with respect to officers of the St. Louis Metropolitan Police Department serving or acting as private watchmen on a part-time basis within the City of St. Louis."

In addition there were five exhibits, the substance of which need not be set forth.

■ In the trial court, and on this appeal, respondents challenged the standing of the corporate appellants to sue because "the statute and rules and regulations do not regulate or control corporations but only persons," and they also challenge the right of the individual to sue on the basis that he cannot voluntarily proceed under a statute and accept the benefits and then challenge its validity. However, the Declaratory Judgment Act specifically authorizes any person whose rights, status or other legal relations are affected by a statute to have determined any question of construction or validity arising under the statute, and obtain a declaration of rights, status or other legal relations thereunder. Rule 87.02, V.A.M.R. Proposed changes in the regulations of the Board of Police Commissioners made pursuant to § 84.340, RSMo 1969, adversely affect the individual plaintiff and also the business operations of the corporate plaintiffs. The trial court correctly overruled respondents' challenge to appellants' standing to maintain this action. See Marshall v. Kansas City, 355 S. W.2d 877 (Mo. banc 1962).

Section 84.340 is a part of a comprehensive statutory plan for placing the St. Louis police department under state control. Section 84.020 creates a Board of Police Commissioners, and § 84.010 provides that no ordinance of the city shall conflict or interfere with the powers of the Board. Other sections provide for the appointment of the members of the Board and specify its duties and powers. It is then provided in § 84.340 as follows:

"The police commissioner [admitted to refer to the Board of Police Commissioners] of the said cities shall have the power to regulate and license all private watchmen, private detectives and private policemen, serving or acting as such in said cities, and no person shall act as such private watchman, private detective or private policeman in said cities without first having obtained the written license of the president or acting president of said police commissioners of the said cities, under pain of being guilty of a misdemeanor."

■ Appellants contend that "The attempted unreserved delegation * * * to the Board of Police Commissioners of the power 'to regulate all private watchmen, private detectives and private policemen serving or acting as such' without any restrictions, guidelines or conditions whatsoever amounts to an unconstitutional delegation of legislative power itself."

■ We have read each case cited by appellants, but we do not consider them to be controlling in view of the factual situation of this case. An ordinance or a statute which vests discretion in administrative officials must, generally stated, include standards for their guidance in order to be constitutional. Behnke v. City of Moberly, 243 S.W.2d 549 (Mo.App.1951); Clay v. City of St. Louis, 495 S.W.2d 672 (Mo. App.1973). However, the tendency is toward greater liberality in permitting grants of discretion, Milgram Food Stores, Inc., v. Ketchum, 384 S.W.2d 510 (Mo.1964), and the validity of any grant of discretion will depend largely upon the nature of the activity with respect to which it is exercised. Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485 (1940). The courts recognize three general exceptions to the strict rule which requires the inclusion of standards in an ordinance or statute when a delegation is made to an administrative body: (1) where the ordinance or statute deals with situations which require the vesting of some discretion in public officials, and where it is difficult or impracticable to lay down a definite, comprehensive rule; (2) where the discretion relates to the adminis-

tration of a police regulation and is necessary to protect the public morals, health, safety and general welfare; (3) where personal fitness is a factor to be taken into consideration. Milgram Food Stores, Inc. v. Ketchum, supra, 384 S.W.2d at p. 514; State ex rel. Priest v. Gunn, 326 S.W.2d 314 (Mo. banc 1959); Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485 (1940) supra; State ex rel. Mackey v. Hyde, 315 Mo. 681, 286 S.W. 363 (banc 1926); Clay v. City of St. Louis, supra, 495 S.W.2d at p. 675–676; 51 Am.Jur.2d Licenses and Permits § 53.

The regulation and licensing of private watchmen, detectives and policemen is an exercise of the police power necessary to protect the public morals, health, safety and general welfare, and such regulation and licensing unquestionably calls for the exercise of judgment and discretion on the part of the Board of Police Commissioners. Under these circumstances § 84.340 is not an unconstitutional delegation of legislative power.

■ Appellant next asserts that by requiring "all private watchmen * * * acting or serving as such" to be licensed, § 84.340 does not differentiate between citizens acting as such and police officers acting as such, and therefore the rules of the Board of Police Commissioners which require private citizens to pay substantial fees and become licensed in order to act as watchmen, while not requiring police officers to do so, "is a patent discrimination and void." No authority is cited by appellants in support of this contention.

It was stipulated that by its rules the Board of Police Commissioners does not require full time police officers to be licensed as watchmen pursuant to § 84.340 as a prerequisite to working, presumably in off-duty hours, as a private watchman.

The statute grants the power to the Board of Police Commissioners to regulate and license all private watchmen, and it also provides that "no person shall act as a private watchman * * * without first having obtained the written license" therein provided for. The Board also has jurisdiction and control of all regular police officers, and it is authorized to make "all such rules and regulations, not inconsistent with sections 84.010 to 84.340, or other laws of the state as they may judge necessary, for the appointment, employment, uniforming, discipline, trial and government of the police." The purpose of a license is to grant to the licensee a special privilege or authority not enjoyed by the class of people to which the licensee belongs to do certain things which without the license would be illegal, and the licensing of a private watchman delegates to him and invests him with the authority, but as limited in the license, "of a 'watchman' as that term was known at common law or of a policeman as that term is now known." Frank v. Wabash Railroad Company, 295 S.W.2d 16 (Mo.1956). When we read all the provisions of §§ 84.010 through 84.340, and construe them together, the effect of appointing a person as a police officer is to grant him a license to act as such, and it results from a determination that he at least meets all of the requirements to be a private watchman. When he acts as a private watchman he is acting pursuant to the license as a policeman, and is not acting as such without a license within the meaning of § 84.340. Appellants cannot complain when the requirements to be a police officer are at least as exacting as those to be a private watchman, and they do not contend they are not.

We also find no merit to appellants' contention concerning the fact that certain fees are charged to obtain a license as a private watchman which regular policemen are not required to pay. What the Board has done, pursuant to its authority to make rules and regulations, is to create two classes of persons entitled to work as private watchmen, with different rules applying to each. If there is a reasonable basis for the classification, the Board may take such action. Ex parte Lockhart, 350 Mo.

1220, 171 S.W.2d 660 (1943); McKaig v. Kansas City, 363 Mo. 1033, 256 S.W.2d 815 (1953); 51 Am.Jur.2d Licenses and Permits §§ 28–29. Without further elaboration, and on the basis of these cases, we are of the opinion that there exists a reasonable basis for the classification, and appellants have made no attempt to show that none exists.

Appellants' final contention is that § 84.-340 does not provide for fees in connection with the licensing of private watchmen, and therefore the Board has no authority to charge any fees. Appellants admit in their brief that if the Board may charge any fees, those charged were justified by the costs of the licensing procedures. Therefore, the fees are not charged as a revenue measure, and appellants do not claim that they are.

■ The first question, although this issue is not presented by the parties, is whether the fees charged are within the prohibition of Section 71.610 which provides that "No municipal corporation in this state shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specifically named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute." The Board of Police Commissioners was created by the State of Missouri, §§ 84.010–84.340, and the City of St. Louis is prohibited to enact any ordinance which shall in any manner conflict or interfere with the powers or the exercise of the powers of the Board. § 84.010. The Board has its own treasurer who is directed to pay money received by him according to the order and direction of the Board. § 84.050. In State ex rel. Sanders v. Cervantes, 480 S.W.2d 888 (Mo. banc 1972), it was held that the State can provide a police system for its cities, and that it had done so in the case of St. Louis. We are of the opinion that the proscription contained in § 71.610 does not apply to the St. Louis Board of Police Commissioners which is a State and not a municipal agency.

■ It is true that § 84.340 does not expressly state that the Board of Police Commissioners may charge a fee for the issuance of a license to act as a private watchman. But when there is no prohibition to charge any fee, the power or authority to regulate and license carries with it by implication the authority to charge such fees as will cover the cost of administering the licensing process. As said in McQuillen, Municipal Corporation, 3d ed. rev., § 26.28, "The grant to a municipal corporation [or other administrative agency] of the power to license implies power to impose a license fee or tax unless this is specifically withheld in the grant." See also City of Jacksonville v. Ledwith, 26 Fla. 163, 7 So. 885, 893 (1890). This implied power does not extend to the imposition of a tax for revenue purposes, but "The sum levied cannot be excessive nor more than reasonably necessary to cover the cost of granting the license and of exercising proper police regulation," Vermont Salvage Corp. v. Village of St. Johnsbury, 113 Vt. 341, 34 A.2d 188 (1943), and it is not essential that the fee constitute the exact or precise expense of issuing the license and regulating the business. Lyons v. City of Minneapolis, 241 Minn. 439, 63 N.W.2d 585 (Minn.1954). The parties have stipulated that, if the Board can charge any fees, those charged are reasonable.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court. All of the judges concur.