Neva E. McCLENNY, Administrator of the Estate of Rosalee Maude Mc-Clenny, Deceased, Plaintiff,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Perrin D. McELROY, Administrator of the Estate of Tracine Elizabeth ARM-BRUSTER, Plaintiff,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

E. A. WINSTANLEY, Administrator of the Estate of Gloria K. TOWN-SEND, Plaintiff,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Mary TRUEBLOOD, Administrator of the Estate of Martha Ann BECK, Deceased, Plaintiff,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Charles E. SANDERS, Administrator of the Estate of Robert E. SANDERS, Deceased, Plaintiff,

v.

UNITED AIR LINES, INC., a corporation, Defendant.

Nos. 11061, 11110, 11116, 11138, 11388.

United States District Court
W. D. Missouri, W. D.

Oct. 6, 1959.

See, also, D.C., 21 F.R.D. 100.

Stuart M. Speiser, New York City, for plaintiffs McClenny, Trueblood, Sanders, McElroy and Winstanley.

Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Mo., for plaintiff Sanders.

Kuraner, Freeman, Kuraner & Oberlander, Kansas City, Mo., for plaintiffs McElroy and Winstanley.

Rogers, Field, Gentry & Jackson, Kansas City, Mo., for defendant.

RIDGE, District Judge.

Pursuant to pre-trial conference procedure had herein, the following legal issue was submitted to the Court for determination before trial:

> "What positive duty did CAA or ARTC personnel have, under the Civil Aeronautics Act of 1938 and Rules and Regulations promulgated by CAB or CAA, to advise or warn defendant, or the pilot of Flight 718, of a 'potentially hazardous condition' while in VFR flight, off airways, under defendant's flight plan (Plff's Ex. 1) as cleared by CAA, Los Angeles?"

The briefs filed by the parties addressed to the above proposition are replete with many matters that cannot be considered by the Court in ruling that legal issue. Matters relating to duties imposed on the CAA or ARTC personnel to give "advice" or "warnings" under Common Law standards; and questions relating to concurrent or sole proximate cause of the casualty here involved, were not intended by the Court to be submitted for determination under the pre-trial conference record made herein on March 18, 1959.

It may be that the Court can, upon the making of a proper record at a subsequent pre-trial conference, determine the Common Law duty, if any, of CAA or ARTC personnel to give "advice" or "warning" to aircraft of a "potentially hazardous condition" such as defendant contends for, but, in light of the present state of the record, no such determination can be made. Hence, in this memorandum, the Court shall not follow the

Knowlton, Ellis & Drape, Kansas City, Mo., for plaintiff Neva E. McClenny.

Hogsett, Houts, James, Randall & Hogsett, Kansas City, Mo., Speiser, Quinn & O'Brien, New York City, by

parties in their labyrinthian arguments on concurrent or sole proximate cause, or attempt any ruling on the Common Law liability of the Government, if any, under the facts as contained in the instant record, and no ruling on such matter is here intended by what is hereinafter said.

Counsel are thoroughly familiar with the provisions of the Civil Aeronautics Act of 1938 and Rules and Regulations as promulgated by CAB and CAA thereunder and the art to which they relate. To shorten this memorandum, only general reference will hereafter be made thereto, without extensive analyses or fortifying quotations therefrom.

■ In the Civil Aeronautics Act of 1938 (49 U.S.C.A. § 401 etc.) it must be conceded that Congress undertook to make all "airspace" in the United States *subject* to control under Rules and Regulations to be promulgated by the Civil Aeronautics Board. As a consequence, technically speaking, there is no uncontrollable airspace in the United States. But, the question here is, in light of its expertise, to what extent did CAB assume and undertake control and promulgate rules and regulations applicable to "airspace." Certainly, the Congress did not, by the Civil Aeronautics Act of 1938, undertake to state any detailed regulation or specifically provide what control should be exerted over individual aircraft using the airspace of the United States, but only addressed itself to that subject generally and left the matter of specific control and regulation to the quasi-legislative discretion of CAB. Seemingly, experienced counsel must *a priori* recognize that proposition and it should not be necessary for this Court to sound out the extent of control assumed by the Congress over "airspace," in determining the legal question presently before the Court.

■ It is fundamental that the first requisite to establishment of a claim of failure to perform a duty imposed by statute or regulation is to show the existence of such a legal duty; and it should be kept in mind that there can be no enlargement of the statutory, or regulatory, duty of a public officer by proof of custom or practice. (cf.) Mid-Central Fish Co. v. United States, D.C.W.D. Mo., 112 F.Supp. 792.

In the factual situation involved in this action we agree with defendant, that the "giving of advice or warning (to defendant or the pilot of defendant's plane, as defendant claims) is obviously not a function of regulation or control" by CAB or CAA, but, at most, is a claim of "protection" (p. 57, Deft's Ans. Br.) arising from duties defendant asserts ARTC personnel should have performed within the ambit of the Civil Aeronautics Act and Rules and Regulations promulgated by CAB and CAA. Before such a duty can be imposed on ARTC personnel, it must be shown to exist as a matter of positive law. If not specifically found in the Act, or some rule and regulation of CAB or CAA, no such duty of "protection" can be declared to exist as a matter of law. Hence, the only matter for determination by the Court at this time is what, if any, statute or regulation imposed a positive duty on the ARTC personnel to give "protection" to defendant's flight, as defendant claims.

Defendant asserts that "in setting up and providing—a system and procedure to protect air traffic, the *CAA* clearly had the authority and duty to, and did, provide certain rules, regulations, procedures and practices to govern the conduct of ARTC personnel in the performance of their traffic protection function." That is true, but the generality of that and like statements made by defendant is wholly insufficient to create a positive duty of "protection" as a matter of law as defendant here asserts. Defendant has the obligation to pinpoint the specific statute, rule or regulation which it claims imposed such conduct on ARTC personnel. It cannot be claimed that such duty arises from custom and practice as a matter of law; it must be defined in or be specifically provided by statute or regulation. The declaration of policy by the Congress to place avia-

tion under control of CAB and CAA does not spell out any such duty to "warn". The Congress merely enacted a law and therein delegated to an executive agency the power to determine the fact, or state of things, upon which the law would be, and was intended to be, made operative. But, until the executive agency takes some action under that delegated authority and promulgates rules and regulations spelling out what "protection" will be given to "aircraft" under specified conditions, the Act of Congress and regulations are merely general law, and before any violation of a mandatory provision thereof can be made the premise of a claim against the Government, an individual member of the public must place himself in a position to insist upon its performance. Defendant has not established, and from the provisions of the Civil Aeronautics Act and CAR the Court is of the opinion that defendant cannot establish, that any of the provisions thereof gave defendant an individual right of "protection" by way of "warning of a potentially hazardous condition" as it here claims.

It must be kept in mind that the Civil Aeronautics Board, as distinguished from the Civil Aeronautics Administration, is an independent agency. In general, the Board performs four chief functions: (1) Regulation of the economic aspects of United States Air Carrier operations, both domestic and international; (2) Promulgation of safety standards in the form of civil air regulations; (3) Investigation and analysis of aircraft accidents; (4) Co-operation and assistance in the establishment and development of international air transportation. Civil Aeronautics Administration, generally speaking, collects and disseminates information relative to civil aeronautics as provided in the Act. Such "activity includes the preparation and distribution of safety posters and other safety education materials; publications dealing with the civil air regulations, technical developments, airport planning and design, and other aeronautical subjects; and of current information on changes in airways and airports, through the Airmen's Guide and Flight Information Manual." (See United States Government Organization Manual, 1949, published by Division of the Federal Register, National Archives Establishment.)

From the foregoing, it is readily understood that rules and regulations promulgated by CAB and published in C.F.R. have the force of law. But all informational matter or manuals disseminated by CAA do not rise to that status. Before the latter may be held to have a status of positive law, they must be made to read on, and be interpreted as being within the ambit of, some controlling Civil Air Regulation promulgated by CAB. It is settled law that in construing an administrative rule or regulation the Court must necessarily look to the authority authorizing its promulgation, and the administrative construction thereof, to determine the purpose of the rule or regulation where its intent and purpose is not clear. Also, where there is more than one interpretation that may be made of such a regulation, the opinion by an officer authorized to issue it is most helpful, but, of course, is not binding as a determination of the legal effect of the regulation. In order to carry out the intent of an administrative rule or regulation, the Court will harmonize the various parts and provisions thereof and give effect to them, if possible, in accordance with the intention with which the rule or regulation was adopted. And where several rules of a regulatory body are not adopted at the same time they will not ordinarily be construed *in pari materia*, unless it is established that they were intended to control the same subject matter or situation. (cf.) 73 C.J.S. Public Administrative Bodies and Procedure §§ 105–106, pp. 425–426, and cases cited.

Defendant in this case relies on Parts 40, 60, 617, and 620 of CAR as the premise of its claim that "ARTC Center Personnel had a positive legal duty to use the means of communication then existing and available to advise or warn UAL

and/or UAL Flight 718 of the imminent hazard of collision created by the flight path of TWA Flight 2." (Deft's Br., pp. 32–43.) Part 40 relates to "Air Carrier Operating Certification"; Part 60 is concerned with "Air Traffic Rules"; Part 617, with "Air Traffic Control"; and Part 620, with "Security Control of Air Traffic." It is not necessary for the Court to analyze the several Parts of those CAR, nor the sections thereof specifically cited and relied on by defendant in its brief, and Exhibit 6 entered herein. A reading of those Parts, in the context of CAR as promulgated by CAB, clearly reveals that they relate to "control" of aircraft by CAA under specified conditions, such as flights in a "control zone," "control area," an "A.D.I.Z.," or while flying under "clearances"; and to the regulation of aircraft in airspace specifically defined and placed under the "control" of CAA; as well as duties imposed on the pilots of aircraft in the operation thereof in "airspace". Seemingly, it is sufficient to say that regulations do not (under the undisputed facts in this case showing as they do that the casualty in question occurred "off airways" and not within a specifically controlled "area" or "zone") undertake to spell out any duties to be performed on the part of ARTC personnel to give any "advisory or warning service" as defendant claims; and that such a "service" duty is not specifically mentioned therein, or in any other regulation of CAB called to the attention of the Court.

The only documents adduced before the Court that might be said (absent a full understanding of the intent and purpose of their promulgation) to lend some support to defendant's contention of traffic service "protection" by ARTC personnel, is the CAA and Weather Bureau "Standard Procedures for Flight Assistance Service" (Deft's Ex. 7); and the ANC Manual relating to "Procedures for the Control of Air Traffic," published by CAA (Plffs' Ex. 8). Both such manuals are publications of CAA, in conjunction with other agencies and branches of the Government. The gen-

esis of those manuals must be known to all "air carriers." Briefly stated, it appears that Section 2.1503 of the ANC Manual (Plffs' Ex. 8) and Section 2.32 of the "Standard Procedures for Flight Assistance Service" (Deft's Ex. 7) cited by defendant, were carried into those exhibits at a time when they were revised by CAA in their present form, after "traffic advisory information service" was publicly discontinued by CAA in 1948. (Plffs' Ex. 9.) Seemingly, the mechanics of how that was brought about in revision of those manuals need not be here reviewed. Defendant apparently does not take issue with the statements made by plaintiffs' counsel in relation to that revisional matter. Suffice to say, that from the record here it appears that plaintiffs' contention of the revision history of Exhibits 7 and 8 accords with administrative understanding thereof, as made manifest in the deposition of Mr. Charles W. Carmody, the Assistant Director of the Office of Air Traffic Control, the official of CAA under whose direction such manuals were promulgated, and that by such revision it must be presumed that CAA intended to make some changes in "air traffic control."

The record here establishes that administrative interpretation of the ANC Manual (Ex. 8) and the "Standard Procedures for Flight Assistance Service" manual (Ex. 7) subsequent to the 1948 revision is not in accord with defendant's contention. (See Carmody Depo., pp. 889–894.) Clearly, those documents relate to some duties to be performed by ARTC personnel; employees of the Weather Bureau and other agencies of the Government in relation to "flight assistance to pilots of all classes." In the generality of Sections 2.1503 of the ANC Manual and 2.32 of the "Weather Bureau Manual" supra, it would appear that ARTC personnel had a duty to give warning of a "potentially hazardous condition" known to them in regard to defendant's flight as defendant contends. But it must be observed that the extent to which that duty is to be performed, under all circumstances, is not spelled

out in either regulation. Therefore, the intent and purpose for which such regulations were promulgated is not clear and explicit and the Court must of necessity turn to administrative interpretation thereof to ascertain the specific duties imposed on ARTC personnel and intended to be covered thereby, as well as the purpose for such regulations. Mr. Carmody, in his deposition, supra, relates the intendment of CAA in the publication of those regulations under the CAR. He says that such publications, regardless of general verbiage, were not intended to give "advisory service" as to traffic hazards; that the purpose of Exhibit 7 was intended to relate only to weather hazards; that such was the purpose thereof and that since 1948 ARTC personnel have not undertaken, under specific direction from CAA, publicly distributed, to give traffic protection service as defendant claims, and gives the reason of CAA therefor. That being so, the Court must accept the administrative "intent and purpose" of promulgation by CAA of Exhibits 7 and 8 to be as stated by Mr. Carmody, and, in its interpretation thereof, rule that the same does not impose on ARTC personnel a positive duty to afford defendant "advisory service" or "protection" as it here claims, as a matter of positive law.

In light of the foregoing, the most that can be said in respect to defendant's theory of "protection" as here proffered, is that if, by the promulgation of Exhibits 7 and 8, supra, or any other rule or regulation by CAB or CAA, "protection" from traffic hazards as defendant claims, was engendered; and reliance was reasonably premised thereon, then such engendered reliance can only be considered in a factual situation *aliunde* such regulations before they can be held as imposing any duty on ARTC personnel as defendant claims. But that matter cannot presently be determined by the Court. Before the Court may make any ruling as to Common Law standards involved in that factual situation, the Court must be advised by defendant concerning the factual situation it claims

establishes any such "positive duty" i. e. as to how, when, where and why "engendered reliance" was so premised.

In light of the briefs filed by the parties and because a ruling in respect to the above matter will in all probability shorten the trial of this case, counsel for defendant are now directed to file with the Court, at the next pretrial conference, in the form of an offer to prove, the factual situation involved in that claim so apparently made by defendant.

In light of the foregoing, the Court declares the law to be:

That neither "Standard Procedures for Flight Assistance Service," (Ex. 7) nor the ANC Manual, (Ex. 8) afforded "advisory service protection" to defendant's Flight 718, as a matter of positive law. No other rule, regulation or manual here cited by defendant and published by CAB or CAA imposed upon ARTC personnel a positive duty to "warn" or grant "protection" to defendant's flight as contended by defendant, as a matter of positive law.

It is so ordered.