Barrett Hamilton, Inc. v. Heublein

5-4252                                                   416 S. W. 2d 309

Opinion delivered June 5, 1967

[Rehearing denied July 26, 1967.]

*Catlett & Henderson,* for appellant.

*Smith, Williams, Friday & Bowen;* By: *B. C. Clark,* for appellee.

Conley Byrd, Justice. Appellant, Barrett Hamilton, Inc., pursuant to Ark. Stat. Ann. § 48-1316 (Repl. 1964), brings this appeal to question the Alcoholic Beverage Control Board's action in approving the transfer by appellee, Heublein, Inc., of Smirnoff Vodka from appellant to Central Distributors, Inc.

Appellee, Heublein, Inc., is a distiller of spirituous liquors. Its brands include Smirnoff Vodka, Relska, Bell's Scotch, Heublein Vermouth, Pop-Off Vodka and Hilshire Gin.

Barrett Hamilton, Inc., is a wholesale liquor distributor which, prior to 1965, was Arkansas wholesaler of all of appellee's products and those of four other major distillers. In February, 1965, Heublein, with Barrett

Hamilton's reluctant consent, transferred some of its brands (not Smirnoff) to Central Distributors, Inc.

Central Distributors, Inc., is a wholesale liquor distributor which in June, 1966, handled part of the Heublein products as well as those of three other distillers.

Ark. Stat. Ann. § 48-1311 (Repl. 1964) authorizes the Director of Alcoholic Beverage Control to adopt rules and regulations to carry out the intent and purposes of the act creating the Alcoholic Beverage Control Board (Ark. Stat. Ann. §§ 48-1301—48-1321 [Repl. 1964]). Pursuant to this authorization Regulation 118, here involved, was adopted. The regulation provides:

"All wholesale liquor distributors shall register their brands of alcoholic beverages handled and distributed in this State with the Director of Alcoholic Beverage Control, and no wholesale liquor distributor shall add an additional brand to his stock without first securing the written approval of the Director of Alcoholic Beverage Control; *no distiller, rectifier, importer or other person shall be permitted . . . to transfer a brand from one wholesale liquor distributor to another . . . without reasonable cause,* which cause must be submitted to the Director of Alcoholic Beverage Control in writing." (Emphasis added.)

In notifying the Director of the proposed transfer, Heublein assigned the following reasons:

1. Barrett Hamilton, Inc., represents other major distillers which, of necessity, require considerable attention from the management of the company.

2. The move would increase the sales potential for all Heublein products.

3. The move will afford Heublein products opportunities to reflect sales gains in keeping with national gains.

4. The move will be in the best interest of Arkansas.

The Director approved the transfer after a hearing on June 21, 1966. In so doing, he found:

"That Barrett Hamilton, Incorporated, had been the Distributor for Smirnoff Vodka in the State of Arkansas for approximately twenty years and that the sales of such vodka has shown a favorable increase over this period; that Heublein, Incorporated, has other brands of alcoholic beverages that have been distributed by Central Distributors, Incorporated, for the past few years, and that it is the desire of Heublein, Incorporated, to have the same distributor to handle all of their brands in this State; that some unpleasantry had developed between employees of Heublein, Incorporated, and Barrett Hamilton, Incorporated, which is not conducive to good business; that the relationship heretofore existing between Heublein, Incorporated, and Barrett Hamilton, Incorporated, was *not contractual* but *permissive* and subject to cancellation and termination at will by either party; and that Heublein, Incorporated, has shown reasonable cause to transfer the account as required by Regulation 118 and should be allowed to transfer all of its brands, including the Smirnoff Vodka account from Barrett Hamilton, Incorporated, to Central Distributors, Incorporated."

On appeal to the Board, additional testimony was taken and on that testimony and the record made before the Director, the action of the Director was affirmed. From the circuit court's affirmance of the Board's action, Barrett Hamilton brings this appeal, relying upon the following points:

1. No proof appellant neglected Smirnoff Vodka in favor of other lines.

2. No proof that transfer would afford greater sales potential for Smirnoff Vodka.

3. Transfer would penalize refusal to violate law.

4. There being no evidence to support orders below, transfer of the line constitutes error of law.

5. Quasi-judiical proceedings should be fair—*i. e.,* the Alcohol Beverage Control Board was not an impartial and disinterested tribunal.

Appellant is faced with the limited scope of review permitted here by Ark. Stat. Ann. § 48-1316 (Repl. 1964), which provides:

"Within thirty (30) days after the mailing of the order of the Board, the licensee, if dissatisfied with the decision of the Board, may appeal to the Circuit Court of Pulaski County. The appeal shall be taken by the filing with the Clerk of the Circuit Court a transcript of the proceedings before the Board. The Circuit Court shall hear no new evidence on this appeal and shall render its judgment only on errors of law. An appeal from the judgment of the Circuit Court may be taken to the Supreme Court of Arkansas."

We interpret the statute to mean that the Board's action on matters of fact must be affirmed if supported by any substantial evidence.

We understand the phrase "reasonable cause" used in Regulation 118 to refer to that ordinary business care and prudence exercised by business men in general.

POINT I. We agree with appellant that there is no substantial evidence to show that it neglected Smirnoff Vodka in favor of other lines. However, we do not interpret the orders of the Director and the Board approving the transfer as standing or falling on this one issue.

POINT II. On the issue that the transfer to Central Distributors would increase the sales potential for all

Heublein's products, we hold that there was substantial evidence to support the Board's finding that Heublein had reasonable cause to transfer Smirnoff Vodka to Central Distributors.

The testimony of I. L. King-Riggs, southwest regional manager for Heublein, is that the portion of its lines transferred to Central Distributors in March, 1965, had shown a dramatic increase in sales after the transfer. From July through December, 1964, Barrett Hamilton handled Relska Vodka and sold 78 cases, while from July through December, 1965, Central Distributors sold 271 cases. From July through December, 1964, Barrett Hamilton sold 392 cases of Heublein Cocktails and for the same period in 1965 Central Distributors sold 564 cases. Barrett Hamilton, from July through December, 1964, sold 19 cases of Heublein Vermouth, while Central Distributors for the same period in 1965 sold 25 cases. Based on these comparisons, it was King-Riggs' opinion that if the remainder of the Heublein line were transferred to Central a similar increase in sales would be experienced.

Opposed to the testimony of King-Riggs was that of Barrett Hamilton, showing that Smirnoff Vodka sales had advanced under its wholesale distributorship from 38 cases in 1947 to 17,386 cases in 1965. For the period from July 1, 1965, to June 13, 1966, appellant had sold 18,000 cases of Smirnoff Vodka.

When all the testimony is viewed in the light of the limited review allowed under § 48-1316, above, we must find that the testimony of King-Riggs was sufficient to substantiate the Board's findings that appellee had reasonable cause to transfer its Smirnoff brand to Central Distributors.

POINT III. Appellant, by way of an affirmative defense, undertook to prove that the transfer of Smirnoff Vodka was being made to Central Distributors because appellant had refused to encourage its salesmen to violate the liquor Fair Trade Law.

In support of this defense, Malcolm Webre, appellant's sales manager, testified that on April 28, 1966, Heublein's representative, Judd Lynn, told him about a national sales drive for Smirnoff; that Heublein wanted appellant to increase its Smirnoff sales for March, April, May and June, 1966, by 25 per cent; that Lynn wanted the drive to commence in May; that when Webre explained the figures were unrealistic, Lynn suggested that appellant give its salesmen a $500 bonus; that Webre replied that if they gave that kind of a do-or-die bonus the salesmen would violate the Fair Trade Law by buying the business from the retailer, and Mr. Lynn agreed; and that Webre pointed out that since March and April had passed, appellant would have to make a 34 per cent increase in May and June to meet the quota.

Judd Lynn testified for appellee that he talked to Webre about the sales drive in March and told him the 25 per cent increase was to be made during the month of January through June; that Smirnoff was running about an 18 per cent increase in the first three months; that the 25 per cent increase was a little less than 10,000 cases; that the amount sold in January and February was to be subtracted from the 10,000 cases and the balance was to be sold for March, April, May and June; and that if each salesman made the goal, each salesman would receive $500. He did not tell Webre that the reason for presenting the program was to force Webre's salesmen to make deals with their bonus money.

Based on the premise that the 25 per cent increase was for the four months of March through June, appellant demonstrably argues that the figures were so excessive that the actual reason for the transfer of Smirnoff was that appellant refused to encourage its salesmen to violate the Fair Trade Law. On the other hand, Heublein points to its exhibit No. 1, notes allegedly in the handwriting of Bob Brewster, an employee of appellant, as corroborating Lynn's testimony that the program was for a six-months period. On the basis of a six-months period with credit being given for increased January

and February sales already made, appellee argues that the 25 per cent quota was not unrealistic or beyond attainment.

The Board gave credit to Judd Lynn's testimony and found that Barrett Hamilton had failed to sustain the burden of showing that the sales incentive program was calculated to induce Barrett Hamilton to violate laws and regulations for the purpose of accelerating sales of Smirnoff Vodka.

We find that there is substantial evidence to support the decision of the Board.

POINT IV. Appellant argues that since there is no evidence to support the orders of the Board, the transfer of the Smirnoff Vodka constitutes error of law. In this we find no merit, for as we have already shown under Point II, there was substantial evidence to support the Board's finding.

POINT V. Appellant argues that the Alcoholic Beverage Control Board was not an impartial and disinterested tribunal.

At the start of the Board hearing, each of the three Board members was sworn and responded quite frankly to appellant's examination. It was shown that the present transfer had been mentioned or discussed generally at a prior Board meeting; the chairman testified he had no opinion on the change of brands from one wholesaler to another which evidence would not change; another was of the same opinion; and the third stated he did have an attitude about changing brands because he had had experience with it some years ago, but he had made no final decision on the matter at hand. Their testimony further reflects that one Board member had owned Central Distributors which he sold in 1955, and that Heublein had bought some cars from an automobile company in which another Board member owned a 20 per cent interest.

No provision is made in the Alcoholic Beverage Control Act for disqualification of Board members for bias, prejudice or preconceived opinion. Actually, appellant does not argue bias and prejudice, but preconceived opinion. The Alcoholic Beverage Control Board, like most administrative bodies, is expected to be manned by persons having some knowledge of the problems involved and in this situation one would not expect to find a member who would not have some preconceived idea about the problems involved in transferring brands from one wholesaler to another.

Even if appellant argued bias and prejudice in addition to preconceived opinion, we do not find sufficient facts in the record to warrant a conclusion that the Board members were so partial or interested that justice was nullified or barred.

For the reasons stated we find no merit to this contention.

Affirmed.