**BROWN–FORMAN DISTILLERS COR-
PORATION et al., Appellants,**

v.

**Robert G. STEWART, Supervisor of Liquor
Control for Missouri, Respondent.**

**No. 58799.**

Supreme Court of Missouri,
En Banc.

March 12, 1975.

1

Cullen Coil, Jefferson City, for plaintiffs-appellants; Carson, Inglish, Monaco & Coil, Jefferson City, of counsel.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM.

This is an action in which Brown-Forman Distillers Corporation, et al, (appellants) [1] seek (1) a judgment declaring void regulations numbered 28 and 4(g) of the Supervisor of Liquor Control (respondent) and (2) a decree enjoining their enforcement. The trial court denied relief and Brown-Forman, et al., appealed. The court of appeals, Kansas City district, in an opinion by Somerville, J., reversed and remanded, holding regulation 4(g) valid and a part of regulation 28 void. On application of respondent, we ordered the case transferred to this court and decide it "the same as on original appeal." Mo. Const. Art. V, § 10, V.A.M.S.

We have determined from our review that the decision of the court of appeals correctly states the law and adopt, with minimal changes, the opinion of Somerville, J.

Regulation 28 reads:

"All spirituous liquor and wine wholesalers shall register with the Supervisor of Liquor Control the brands of alcoholic beverages which they handle and distribute in this State, and no spirituous liquor and wine wholesaler shall add an additional brand to his stock without first securing the written approval of the Supervisor of Liquor Control. *No distiller, rectifier, out-of-state solicitor, importer or other person shall be permitted, after the effective date of this regulation, to transfer a brand from one spirituous liquor and wine wholesaler to another or to create dual distributorships on the same items without reasonable cause, which cause must be submitted to the Supervisor of Liquor Control in writing. If any spirituous liquor and wine wholesaler affected objects to the transfer, the objection must be submitted to the Supervisor of Liquor Control in writing. After due examination the Supervisor of Liquor Control shall either approve or disapprove the transfer. If the Supervisor of Liquor Control disapproves the transfer the brand shall remain in status quo.*"

The last four sentences of this regulation are italicized to indicate the only portion thereof attacked by appellants. No attack is made upon the first sentence of the regulation.

Regulation 4(g) reads:

"(1) No manufacturer, distiller, wine maker or wholesaler of alcoholic beverages shall conduct or participate in any promotional contest or activity in connection with the sale or distribution of such bever-

---

1. The seven appellants are foreign corporations licensed by respondent as distillers, rectifiers, out-of-state solicitors, and importers of alcoholic beverages to solicit orders for intoxicating liquors from licensed spirituous liquor and wine wholesalers in Missouri, and to ship such intoxicating liquors from outside to wholesalers in this state.

ages or any other type of contest or activity promoting the sale or distribution of alcoholic beverages, nor shall they allow, permit, or suffer any employee to participate in any such contest or activity whereby the employee is paid, or otherwise rewarded or compensated on the basis of his success in the contest or activity, or receives any bonus, payment or other reward based upon his production in selling or promoting sales of such alcoholic beverages.

"(2) These provisions shall not apply to manufacturers or wholesalers who deal exclusively in malt alcoholic beverages, nor shall they apply where the pay or compensation of the employee is based upon his total production in selling or promoting sales of all the various brands of intoxicating beverages dealt in by the manufacturer, distiller, wine maker or wholesaler, provided that, if such pay or compensation is increased and such increase is only temporary and shall not continue and be in effect for at least one year, there is no exception and paragraph (1), above, applies."

Appellants attack all of this regulation.

Evidence adduced at the trial disclosed that each appellant has written or oral contracts with their respective Missouri wholesalers. The various contracts, so far as pertinent to the issues on appeal, can be generally characterized as being terminable without cause or notice, without cause but with notice of termination, or without right of renewal and early termination for cause. Appellants offered two witnesses who each tendered the like opinion that the contractual rights of appellants to cancel contracts with wholesalers in accordance with the terms of the respective contracts were valuable rights, which, in effect, were destroyed or taken away by regulation 28, and that regulation 4(g) adversely affected each appellant because it prohibited all advertising by appellants. The referred to witnesses further testified that the relationship between distiller-manufacturers and wholesalers "is really a partnership"

and "a franchise," and that there were verbal, as well as written obligations and commitments on the part of both distiller-manufacturers and wholesalers which, depending upon a change of circumstances or conditions, such as failure on the part of a wholesaler to maintain adequate sales management or to maintain adequate credit, might necessitate moving part or all of a distiller-manufacturer's line of products from one wholesaler to another. Appellants' witnesses acknowledged that distiller-manufacturers could exert undue pressure or influence on wholesalers to "push" a particular product resulting in evasion or violation by such wholesalers of the provisions of the Liquor Control Law (Chapter 311)[2] and valid regulations promulgated thereunder, but denied that the respective companies which they represented had ever engaged in any such tactics or terminated the contract of any of their wholesalers for failure to respond to such influence or pressure.

Respondent's evidence disclosed that regulation 28 was promulgated to eliminate illegal practices engaged in by wholesalers in order to keep a distiller-manufacturer's line because of the dominant control possessed by distiller-manufacturers over wholesalers in view of the power to transfer the right of distribution from one wholesaler to another and to create dual distributorships. Respondent's evidence further disclosed that former regulation 28, directed towards the aforementioned problem, was unworkable because it compelled a wholesaler to commit "economic suicide" by reporting to the Supervisor of Liquor Control undue pressures and influence exerted on him by distiller-manufacturers. The former regulation read:

"No manufacturer, licensed by the State of Missouri, including one who blends or bottles intoxicating liquor, or his agent, shall, directly or indirectly, threaten to remove, or remove a line, from a wholesaler because of the refusal or failure of said

---

**2.** References to Chapter or sections of the statutes are to RSMo 1969, V.A.M.S.

wholesaler to evade or disobey any existing laws or regulations of the State of Missouri relating to intoxicating liquor. Upon receipt of information indicating such conduct, said licensee will be cited to appear for a hearing before the Supervisor of Liquor Control to show cause why the license should not be suspended or revoked."

Respondent's evidence further disclosed that regulation 4(g) was designed to control any promotional contest whereby the compensation to a salesman of a distiller-manufacturer or wholesaler was based on the sale of a particular brand or item, because such contests encouraged violation of the liquor laws, but that regulation 4(g) did not outlaw all advertising by distiller-manufacturers.

It becomes important to circumscribe the grounds upon which appellants attack the validity of the regulations in question by first pointing out certain aspects involving rule-making authority possessed by respondent which appellants do not question. Appellants concede, arguendo, the following: (1) respondent, by virtue of the last sentence of § 311.336, and subparagraphs (6) and (10) of § 311.660, possesses authority to promulgate *valid* regulations pertaining to the general areas of control under consideration; (2) traffic in liquor is subject to strict legislative regulation; (3) no question is raised concerning the constitutionality of any provisions of the Liquor Control Law from which valid regulations concerning the general areas of control implicit in the regulations in question might spring; (4) valid regulations pertaining to the general areas of control implicit in the regulations in question are not condemned as being unnecessary or undesirable; and (5) valid regulations pertaining to the general areas of control implicit in the regulations in question could be lawfully and properly promulgated by respondent in view of various provisions found in the Liquor Control Law. On the other hand, appellants vigorously contend that the regulations in question are so broad and vague that they are tantamount to the vestment of absolute arbitrary enforcement power in respondent beyond the pale of the Liquor Control Law, all of which is compounded by the fact that violation of any of the regulations in question, knowingly or unwittingly, subjects appellants and other licensee violators to having their license removed or suspended. Section 311.660(6).

■ There can be no question that respondent, as Supervisor of Liquor Control, is statutorily vested (§ 311.660, supra) with power and authority to promulgate *valid* regulations to fill in the interstices of the Liquor Control Law. Milgram Food Stores, Inc. v. Ketchum, 384 S.W.2d 510, 513[1] (Mo.1964).

Since traffic in liquor is subject to the plenary power of the state, those who do so are severely limited in claiming the full spectrum of those common, inherent, natural or constitutional rights attendant to most other business enterprises. The rationale underlying permissive impingement of basic rights of those engaged in the traffic of liquor, which would be struck down if shown to exist with respect to most other business enterprises, is that the business of engaging in the traffic of liquor is a matter of privilege, rather than right, in view of the deleterious character of the product trafficked in, if improperly or improvidently utilized. As a corollary, the enactment of liquor laws and the promulgation of regulations pertaining thereto are indelibly imbued with recognized principles applicable to exercise of the police power for the protection of public morals, health, safety and welfare. In this connection the courts have long recognized the practical necessity of empowering those mandated with the enforcement of such laws great latitude of discretion in prescribing rules and regulations to enforce and carry out the legislative will inherent in the laws they are charged to administer. Milgram Food Stores, Inc. v. Ketchum, supra; Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485, 490 (1940); and State v. Wipke, 345 Mo. 283, 133 S.W.2d 354, 359 (1939).

As heretofore mentioned, appellants concede the logic and controlling applicability of the above principles with respect to both regulations under attack. The true thrust of appellants' attack on regulation 28, although at first blush somewhat obscure, is that it permits respondent to act in an arbitrary and capricious manner, both with respect to (1) time periods involving approval or disapproval of a proposed transfer or creation of a dual distributorship, and (2) cause for approval or disapproval of either, because no time is prescribed in the regulation within which a wholesaler may file objections or as to when respondent must act, and "reasonable cause" fails to prescribe a standard or guideline restricted to implementation of the Liquor Control Law but, to the contrary, empowers respondent with broad, sweeping authority to approve or disapprove requested transfers or creation of dual distributorships for reasons that may, or may not, fall within the purview of the legislative intent as implicitly or explicitly expressed in the Liquor Control Law.

██ Appellants' attack on regulation 28 on the ground that it empowers respondent to act in an arbitrary manner by the simple expedient of waiting indefinitely for a wholesaler to file objections or otherwise delay indefinitely in ruling on an application to transfer or create dual distributorships, because no time is prescribed in the regulation within which a wholesaler may file objections or when respondent must act, is not well taken. The filing of objections by a wholesaler is not required before respondent approves or disapproves a pending application. The filing of objections is optional with an affected wholesaler and therefore not a prerequisite for approval or disapproval of a pending application by respondent. In approving or disapproving a pending application respondent exercises a quasi-judicial function and necessarily has an implied duty to rule expeditiously and promptly. Mandamus affords an aggrieved applicant a remedy to compel respondent to rule on a pending application, if he refuses to act expeditiously and promptly, although he may not be compelled to rule in a particular manner. State ex rel. Pedrolie et al. v. Kirby, 349 Mo. 1010, 163 S.W.2d 964, 967[5] (1942); State ex rel. Maddox v. Garner, 459 S.W. 2d 40, 44[2] (Mo.App.1970); and 55 C.J.S. Mandamus § 135, p. 225.

Respondent begs the question in answering the true thrust of appellants' attack on regulation 28 with respect to "reasonable cause" as a proper criterion for approval or disapproval of an application to transfer or create a dual distributorship, by arguing that the regulation "bears a reasonable relationship to the legislative objective." The true thrust of appellants' attack is that "reasonable cause" is so abstract and indefinitive that determination of its existence permits unbounded variance from application to application depending upon nebulous subjective factors which the party charged with determination may choose to consider; and, even though permitting consideration of factors relating to improper pressure or influence exerted by distiller-manufacturers or wholesalers to evade or skirt the Liquor Control Law, and regulations promulgated thereunder, it may equally be construed as permitting consideration of factors totally unrelated thereto and which involve management decisions of distiller-manufacturers completely beyond the pale of control envisioned by the legislature in the Liquor Control Law.

██ There can be no question but what that portion of regulation 28 now under consideration is prima facie valid and reasonable, and the burden is upon appellants to show otherwise. Foremost-McKesson, Inc. v. Davis, 488 S.W.2d 193, 1. c. 200 (Mo. banc 1972), suggests that the imposed burden is met if the regulation in question is ". . . so at odds with fundamental principles as to be mere whim or caprice."

██ Former regulation 28 clearly expressed the evil at which present regulation 28 is directed, in the following language: ". . . because of the refusal

or failure of said wholesaler to evade or disobey any existing laws or regulations of the State of Missouri relating to intoxicating liquor." However, when present regulation 28 was promulgated, the language setting forth the specific evil in the old regulation was discarded by substituting the broad term "reasonable cause," although the evidence at trial indicated that the same evil was still prevalent and the only one sought to be controlled by the present regulation. Careful analysis of the Liquor Control Law dispels harboring any question that the evil which old regulation 28 sought to control was properly within the purview of the Liquor Control Law and therefore subject to the promulgation of a *valid* regulation by respondent. By way of elucidation, § 311.050 makes it unlawful to sell intoxicating liquor without a license. Section 311.070 prohibits "distillers, wholesalers, wine makers, brewers or their employees, officers or agents" from having any financial interest, directly or indirectly, in a retail business selling intoxicating liquors, prohibits them from directly or indirectly loaning, giving away or furnishing "equipment, money, credit or property of any kind, except ordinary commercial credit for liquors sold to such retail dealers," and provides that all "contracts entered into between distillers, brewers and wine makers, or their officers or directors, in any way concerning any of their products, obligating such retail dealers to buy or sell only the products of any such distillers, brewers or wine makers, or obligating such retail dealers to buy or sell the major part of such products required by such retail vendors from any such distiller, brewer or wine maker, shall be void and unenforceable in any court in this state." Separate licenses are required for every phase of the liquor traffic and manufacturers, wholesalers and retailers are statutorily categorized as distinct separate phases thereof. Sections 311.180, 311.190, 311.200 and 311.270. Section 311.332 provides: "It shall be unlawful for any wholesaler licensed to sell intoxicating liquor and wine containing alcohol in excess of five per cent by weight to persons duly licensed to sell such intoxicating liquor and wine at retail, to discriminate between retailers or in favor of or against any retailer or group of retailers, directly or indirectly, in price, in discounts for time of payment, or in discounts on quantity of merchandise sold, or to grant directly or indirectly, any discount, rebate, free goods, allowance or other inducement, excepting a discount not in excess of one per cent for quantity of liquor and wine, and a discount not in excess of one per cent for payment on or before a certain date." Sections 311.334 and 311.336 require wholesalers to file a schedule of prices. The above statutes indicate a legislative intent to preclude a licensee in one phase of the liquor traffic from controlling other separate and distinct phases of the liquor traffic, thereby controlling traffic in liquor in its entirety. Be that as it may, nowhere in the Liquor Control Law is there to be found any statute or combination of statutes that indicate an intent on the part of the legislature to regulate otherwise normal business judgment decisions that in no way relate to the recognized evils in the traffic of liquor that the law seeks to curb, nor to empower the respondent with blanket authority to do so. It is not deemed necessary to burden this opinion with examples of commonplace business judgment decisions that are not proscribed by the Liquor Control Law and which in no way run counter to any explicit or implicit legislative intent contained therein.

Subsection (6) of § 311.660 authorizes the Supervisor of Liquor Control to "[e]stablish rules and regulations for the conduct of the business carried on by each specific licensee under the license, and such rules and regulations if not obeyed by every licensee shall be grounds for the revocation or suspension of the license." Quite pertinent to the issues herein involved is the construction given subsection (6) of § 311.660, supra, by the court in Milgram

Food Stores, Inc. v. Ketchum, supra, 384 S.W.2d 1. c. 513, 514:

"The State says Sec. 311.660(6) does not vest the Supervisor with arbitrary discretion to make rules and regulations because he is limited to making rules that are reasonable and consistent with this law, saying: 'This is implied in the rule making power of necessity, in order to construe the statute validly. It is also expressed in Section 311.660, RSMo,' because 'it may be reasonably inferred from the use of the term "other" in subsection (10), that the limitation, that such other rules be necessary, reasonable and consistent with this law, also applies to the other nine subsections of the statute including subsection (6).' The State says Subsection (6) so construed must be thus read: '(6) Establish rules and regulations for the conduct of the business carried on by each specific licensee under the license [as are necessary and feasible (reasonable) for carrying out the provisions of this chapter, as are not inconsistent with this law] * * *.'

"We think this is a reasonable construction of the rule-making authority given by Sec. 311.660."

Bearing the above in mind, respondent flatly states in his brief that the words "reasonable cause" have a specific meaning, namely, the meaning given such words by the Supreme Court of Arkansas in a regulation almost identical to the one herein involved in Barrett Hamilton, Inc. v. Heublein, Inc., 242 Ark. 900, 416 S.W.2d 309, 312 (1967) wherein that court stated, "We understand the phrase 'reasonable cause' . . . to refer to that ordinary business care and prudence exercised by business men in general." Taken at face value, respondent, by the positive position taken, unquestionably interprets "reasonable cause" as entailing considerations that go beyond a mere finding that transfer of a brand from one wholesaler to another or the creation of dual distributorships was not for the purpose of retaliation against a wholesaler who refused to succumb to pressure exerted by a distiller-manufacturer to evade or disobey the existing laws or regulations of the state of Missouri relating to intoxicating liquor. "[O]rdinary business care and prudence exercised by business men in general" adds a new dimension to "reasonable cause." Enforcement of regulation 28 comportable with such added dimension, unless otherwise limited, would permit respondent to enmesh himself in business considerations and judgment decisions to be made by distiller-manufacturers regarding the transfer of brands from one wholesaler to another, or as to creation of dual distributorships, which bear no semblance or relationship to the objectives of the Liquor Control Law and which are obviously beyond the pale of all legislative intent explicitly or implicitly expressed therein.

■ The principal vice of "reasonable cause" as used in regulation 28 is that it would permit respondent to prohibit the transfer of a brand or the creation of a dual distributorship absent the showing of a good business reason, even though the agreement between the parties expressly provided otherwise. The only authority possessed by respondent with respect to the transfer of brands or the creation of dual distributorships is to prevent a distiller-manufacturer from using its contract right of cancellation as a lever with which to coerce its wholesaler into some act violative of the Liquor Control Law or valid regulations promulgated thereunder. Respondent does not possess authority, under the guise of promulgating regulations, to rewrite such contracts by adoption of a regulation which, in effect, strikes out a provision providing for cancellation without cause and substitutes a new provision requiring an affirmative showing that the cancellation was for a cause compatible with "ordinary business care and prudence exercised by business men in general." By way of speculation, perhaps respondent intended to provide by regulation 28 that a distiller-manufacturer could not transfer a brand or create a dual distributorship ex-

cept for a reason which would not be subversive of the Liquor Control Law or valid regulations promulgated thereunder. If so, such intended scope would still be unacceptable because a distiller-manufacturer would be required to affirmatively state a reason for concellation of its agreement with an existing wholesaler even though the agreement gave the distiller-manufacturer the right to cancel without a reason of any kind, i. e., cancellation without cause. Still another possibility is that respondent intended only to require that a distiller-manufacturer not have a subversive reason for cancellation, and to satisfy respondent in that respect by requiring the distiller-manufacturer to file a statement to that effect. A perfectly valid regulation could doubtlessly be written along this line, but the regulation under attack is not cast in language calculated to irrevocably convey such intent or meaning.

Vagueness and uncertainty in both statutes and rules are phantoms of injustice since they lend themselves, depending upon the inclination of the individual empowered with their enforcement, to variable application, and therein lies their pervasive vice because they empower arbitrary action. "Reasonable cause" as used in regulation 28 is so lacking in certainty and definiteness as to repose arbitrary power in the Supervisor of Liquor Control, and, additionally, if the meaning attributed to it by respondent in his brief is accepted, regulation 28 goes beyond the objectives of the Liquor Control Law and thereby constitutes an unlawful usurpation of legislative power. In Milgram Food Stores, Inc. v. Ketchum, supra, 384 S.W.2d 515, the court cautioned "[W]e will not go so far as some of the cases to hold there can be arbitrary action because the privilege to engage in the liquor traffic is involved." Although the regulation promulgated by the Supervisor of Liquor Control involved in *Milgram* was upheld as being reasonable and nonarbitrary, it was in no way comparable to that portion of regulation 28 which appellants attack in the instant case.

In spite of the fact that unbridled bureaucracy is the subtle destroyer of representative government, inertness, permitting administrative agencies by the promulgation of regulations to encroach more and more on both rights and privileges exercised by individuals and business entities, frequently prevails, and, particularly, a trend exists to turn the judicial back when the encroachment is upon the exercise of privileges in areas subject to exercise of the police power. Nevertheless, there exists an outer perimeter in this state, beyond which such encroachment may not go. Even though regulation 28 is directed towards the exercise of a privilege subject to the police power, it must be "reasonable" and "not inconsistent" with the Liquor Control Law. Milgram Food Stores, Inc. v. Ketchum, supra, 1. c. 513, 514.

The employment of "reasonable cause" in regulation 28 renders it invalid and void because the language used is so sweeping and broad that it clothes respondent with arbitrary power that is incompatible with the test of "reasonableness" and it is "inconsistent" with the objectives of the Liquor Control Law and the legitimate evils sought to be eliminated. The arguments advanced by respondent in this respect are not persuasive and a careful analysis of all cases cited by him are readily distinguishable.

This court emphasizes that nothing in this opinion should be construed as preventing the Supervisor of Liquor Control from promulgating a proper and valid regulation to eliminate improper pressures and influences exerted by distiller-manufacturers on wholesalers by threats to transfer brands or create dual distributorships if their respective wholesalers refuse or fail to evade or disobey existing laws or regulations of the state of Missouri relating to intoxicating liquor in order to promote and increase the sale of distiller-manufacturers' line of products. However, the function of rewriting regulation 28 is the exclusive province of respondent, and this court will not intrude

into that process under the veiled guise of interpretation.

The thrust of appellants' attack on regulation 4(g) is that it is unreasonable and arbitrary on its face because it prohibits appellants from advertising in any manner, and, further, provides that the conduct which it prohibits violates the Liquor Control Law, which, in the absence of the regulation, could not be construed to constitute a violation of that law.

At first blush, a construction of the initial portions of regulation 4(g) as proscribing all advertising might be plausible, if the phrase "promotional contest or activity," is construed in a vacuum. However, rules which are pari materia must be construed together. 73 C.J.S. Public Administrative Bodies and Procedures § 105, pp. 425, 426; Falvey v. Simms Oil Co., 92 S. W.2d 292, 296 (Tex.Civ.App.1936); and McClenny v. United Air Lines, Inc., 178 F.Supp. 372, 375 (W.D.Mo.1959). So guided, a construction of regulation 4(g) as contended by appellants must fail. Regulation 25, for instance, deals explicitly and in detail with requirements and restrictions in the *advertising* of intoxicating beverages—including a definition of "Advertisement." Regulation 4 itself contains other sections which permit the furnishing of certain "advertising" items or services to retail licensees from entities such as appellants. See regulations 4(b), 4(c) and 4(d). Thus, advertising, in the broad sense, is clearly contemplated by the regulations. The only logical conclusion to be drawn, therefore, is that the phrase "promotional contest or activity," as well as the entire regulation, does not, in fact, or by implication, prohibit *all advertising*. To hold otherwise would totally disregard the context in which regulation 4(g) was adopted, and would ignore the intent of the Supervisor of Liquor Control, as clearly expressed in regulations 25, 4(b), 4(c) and 4(d), above referred to, to allow within proper limits the practice of advertising in the liquor industry.

Appellants' further challenge to regulation 4(g) is also unavailing. The broad, yet valid, authority conferred upon the Supervisor by subsections (6) and (10) of § 311.660 is limited only in the respect that regulations be necessary, reasonable, and not inconsistent with the Liquor Control Law. Milgram Food Stores, Inc. v. Ketchum, supra. Again, the proscribed conduct in regulation 4(g) may best be described as relatively short-term contests or sales campaigns focusing on the promotion of a particular brand or item. It is to be noted that the regulation specifically exempts the awarding of additional compensation based on *total* sales production. The evidence in the trial court established that the proscribed conduct was necessitated by its erstwhile propensity to entice and engender violations of § 311.332 which section makes unlawful the discriminatory practice of granting out of the ordinary discounts, free goods, rebates, and the like. This court also finds regulation 4(g) consistent with § 311.332, supra, and sufficiently related to the legislative objective expressed therein. Therefore, this court concludes and holds that regulation 4(g) is necessary, reasonable and consistent with the Liquor Control Law. Subsection (6) of § 311.660, supra, and Milgram Food Stores, Inc. v. Ketchum, supra, stand as authority that regulation 4(g) does not constitute an unlawful exercise of rulemaking authority by respondent on the basis that its violation constitutes a ground for the revocation or suspension of a violator's license.

The judgment of the trial court is affirmed as to regulation 4(g); it is reversed as to the last four sentences of regulation 28. The cause is remanded with directions that the trial court (1) enter judgment declaring regulation 4(g) valid and the last four sentences of regulation 28 void; and (2) enter a decree enjoining respondent from enforcing that part of regulation 28 declared void.

DONNELLY, C. J., and MORGAN, HOLMAN, BARDGETT, HENLEY and FINCH, JJ., concur.

Seiler, J., concurs in part and dissents in part in separate opinion filed.

SEILER, Judge (concurring in part and dissenting in part).

I concur in that portion of the principal opinion which affirms the judgment of the trial court as to regulation 4(g) and also with respect to that portion of regulation 28 which is held valid. However, I am respectfully unable to concur with the portion of the opinion which declares the last four sentences of regulation 28 to be void.

The law is well established that rules and regulations are to be sustained unless unreasonable and plainly inconsistent with the act, and they are not to be overruled except for weighty reasons. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L. Ed. 831, (1948); King v. Priest, 357 Mo. 68, 206 S.W.2d 547 (Mo. banc 1947). The burden is upon those challenging the rules to show that they bear no reasonable relationship to the legislative objective. King v. Priest, supra; Ketring v. Sturges, 372 S.W.2d 104 (Mo.1963).

The legislative intent demonstrated by the Liquor Control Laws is to prevent a distiller-manufacturer from using its contract right of cancellation as a lever with which to coerce its wholesalers into some act violative of the Liquor Control Laws. Thus it is clearly consistent with this intent that the supervisor be empowered to require the distiller-manufacturer to file a statement which will dispel any doubt about a contract cancellation on this score. It is, of course, quite difficult to prove a negative, and in practice, the absence of a subversive intent is most easily demonstrated by the showing of a proper motivation. "Reasonable cause", therefore, in the context of this regulation and in light of the evil sought to be prevented, is any cause not inconsistent with the purpose of the Liquor Control Laws.

The distiller-manufacturers argue, however, that their contract rights enable them to terminate a contract at will, without any cause at all (although practical experience tells us that decisions of this nature are rarely taken without some reason). But this does not mean that the regulation is necessarily invalid, because if in fact there is no subversive reason for the exercise of this cancellation right in a particular case, then upon making such a showing to the supervisor, the requirements of the regulation would be met, and the contract rights of the parties are modified only to the permissible extent that cancellation cannot be exercised for subversive reasons, even if such contract is cancellable at will. So read, the relationship between the regulation and the legislative objective is obvious.

As I understand the situation, none of the distillers is contending that there has been any arbitrary application of regulation 28 by the supervisor. They have expressed their fears as to what might occur hypothetically, although none of what they fear has indeed taken place. While the interpretation and construction of a statute by an agency charged with its administration is entitled to great weight, it is not controlling on this court. McClenny v. United Air Lines, 178 F.Supp. 372 (W.D. Mo.1960). It is well-established that administrative rules, which are promulgated to implement a particular act, must be read in conjunction and harmony therewith, Foremost-McKesson, Inc. v. Davis, 488 S. W.2d 193 (Mo. banc 1972); thus we should reject the statement in respondent's brief which indicates that "reasonable cause" refers to "ordinary business care and prudence exercised by business men in general." I agree with the principal opinion in that the supervisor may not undertake to judge the actions of the distiller-manufacturers from the standpoint of whether or not good business judgment has been exer-

cised. However, we are not compelled to accept this construction where it is outside the scope of power delegated to the agency, nor are we compelled to invalidate the regulation where another construction which is in harmony with the legislative intent can be adopted.

I would uphold regulation 28 as written. If in fact the supervisor does act in a manner inconsistent with the objectives of the legislation then there are ample means by which the distiller-manufacturer can proceed to obtain redress. But we should not assume in advance that the supervisor will act unlawfully, or that the language of the regulation authorizes him to do so.