Dear Mr. Rice:
This opinion is in response to your questions asking:
 1. May distillers, wholesalers, winemakers, brewers or their employees, officers, or agents lawfully sell draught wine tapping accessories, such as standards, faucets, rods, vents, taps, tap standards, hoses, washers, couplings, gas gauges, vent tongues, shanks and check valves, to licensed retailers in this state at a price not less than the cost to the distiller, wholesaler, winemaker or brewer who initially purchased them, for the purpose of dispensing draught wine?
 2. If it is lawful for distillers, wholesalers, winemakers, brewers, or their employees, officers or agents to sell draught wine tapping accessories to licensed retailers at a price not less than cost, may distillers, wholesalers, winemakers, brewers or their employees, officers or agents install the draught wine tapping accessories in the retailer's establishment?
 3. May distillers, wholesalers, winemakers, brewers or their employees, officers, or agents lawfully provide draught wine coil cleaning service to licensed retailers?
Clearly, under the present statutory and regulatory scheme, such actions would not be permissible as the only provision allowing distillers, wholesalers, winemakers and brewers to supply draught equipment relates to beer. Therefore, we presume your questions relate to whether a regulation for wine, similar to the present regulation for beer, would be legally permissible.
The main deterrent to allowing distillers, wholesalers, winemakers, and brewers to supply draught wine tapping accessories is Section 311.070.1, RSMo 1986, which provides:
 311.070. Financial interest in retail businesses by certain licensees prohibited, exceptions — sales by drink on premises in promotion of tourism, requirements — penalties — certain contracts unenforceable — contributions to charitable, religious, or educational organizations permitted, when. — 1. Distillers, wholesalers, winemakers, brewers or their employees, officers or agents, shall not, under any circumstances, directly or indirectly, have any financial interest in the retail business for sale of intoxicating liquors, and shall not, directly or indirectly, loan, give away or furnish equipment, money, credit or property of any kind, except ordinary commercial credit for liquors sold to such retail dealers; however, notwithstanding any other provision of this chapter to the contrary, for the purpose of the promotion of tourism, a distiller whose manufacturing establishment is located within this state may apply for and the supervisor of liquor control may issue a license to sell intoxicating liquor, as in this chapter defined, by the drink at retail for consumption on the premises where sold; and provided further that the premises so licensed shall be in close proximity to the distillery and may remain open between the hours of 6:00 a.m. and midnight, Monday through Saturday and between the hours of 11:00 a.m. and 9:00 p.m., Sunday. The authority for the collection of fees by cities and counties as provided in section 311.220, and all other laws and regulations relating to the sale of liquor by the drink for consumption on the premises where sold, shall apply to the holder of a license issued under the provisions of this section in the same manner as they apply to establishments licensed under the provisions of section 311.085, 311.090, or 311.095.
Further, Section 311.332.1, RSMo 1986, provides:
 311.332. Wholesale price regulation — discrimination prohibited — discounts authorized, when — manufacturer rebate coupons permitted. — 1. Except as provided in subsection 2 of this section, it shall be unlawful for any wholesaler licensed to sell intoxicating liquor and wine containing alcohol in excess of five percent by weight to persons duly licensed to sell such intoxicating liquor and wine at retail, to discriminate between retailers or in favor of or against any retailer or group of retailers, directly or indirectly, in price, in discounts for time of payment, or in discounts on quantity of merchandise sold, or to grant directly or indirectly, any discount, rebate, free goods, allowance or other inducement, excepting a discount not in excess of one percent for quantity of liquor and wine, and a discount not in excess of one percent for payment on or before a certain date. The delivery of manufacturer rebate coupons by wholesalers to retailers shall not be a violation of this subsection.
However, 11 CSR 70-2.040(1), Rules and Regulations of the Supervisor of Liquor Control, provides in part:
 No retail licensee shall directly or indirectly accept any loans, equipment, money, credit or property of any kind, except ordinary commercial credit. No person licensed to sell intoxicating liquor, or nonintoxicating beer at retail, shall permit any distiller, wholesaler, winemaker, brewer, or his or their employees, officers or agents, under any circumstances, directly or indirectly, to have any financial interest in his retail business for the sale of intoxicating liquor, or nonintoxicating beer, and he shall not directly or indirectly, accept from such distiller, wholesaler, winemaker, brewer or their employees, officers or agents, any loan, gift, equipment, money, credit, or property of any kind except ordinary commercial credit for intoxicating liquor and nonintoxicating beer sold to such retailer, except that to properly preserve and serve draught beer only, and to facilitate the delivery thereto he may accept, and brewers and wholesalers may lend, give, rent, or sell and they may install or repair any of the following items or render to retail licensees any of the following services: beer coils, and coil cleaning, sleeves and wrappings, box couplings and draft arms, beer faucets and tap markers, beer and air hose, taps, vents and washers, gauges and regulators, beer and air distributors, beer line insulation, coil flush hose, couplings, and bucket pumps, portable coil boxes, air pumps, blankets or other coverings for temporary wrappings of barrels, coil box overflow pipes, tilting platforms, bumper boards, skids, cellar ladders and ramps, angle irons, ice box grates, floor runways, and damage caused by any beer delivery excluding normal wear and tear and a complete record of such equipment furnished and installed, and such repairs and service made or rendered must be kept by the brewer or wholesalers furnishing, making or rendering same for a period of not less than one (1) year.
The provisions of Section 311.070, RSMo 1986, are intended to prevent a "tied house" from arising. A "tied house" concern arises when a retailer is controlled by a wholesaler. The statute prevents such concerns by precluding a licensee in one phase of the liquor traffic from controlling other separate and distinct phases of the liquor traffic. Brown-FormanDistillers Corporation v. Stewart, 520 S.W.2d 1, 7 (Mo. banc 1975). However, this same concern was present when the draught beer exception was enacted. Thus, the question becomes whether a similar exception to that provided for draught beer, if provided for draught wine, would be legally permissible.
Upon close scrutiny, the supply of the listed equipment by a distiller, wholesaler, winemaker or brewer does not violate the "tied house" concern. If the specified equipment is provided at a price not less than cost, it cannot be used as an inducement or a "tie" of the distiller, wholesaler, winemaker or brewer to the retailer. Such a regulation would forbid the use of offers of free equipment or equipment reduced in price to "tie" the retail licensee to the distiller, wholesaler, winemaker or brewer. Further, every distiller, wholesaler, winemaker and brewer would have an equal opportunity to supply such equipment and every retail licensee would have the choice of whether or not to serve draught wine and further from whom to purchase the equipment. Thus, the "tied house" concern is eliminated by the requirement that the equipment be sold at not less than cost and by the competition in the marketplace.
There is a further concern beyond that of the "tied house" concern. The Supervisor of Liquor Control is responsible for the issuance, regulation and administration of licenses issued for the sale of intoxicating liquor and nonintoxicating beer. As such, the Supervisor has a duty to protect the health, safety and welfare of the public as it interacts with liquor licensees. Draught wine presents particular problems in this area. It has specialized requirements, some of which are quite different than draught beer. For example, we are informed draught wine must be pressurized with nitrogen rather than CO2 and also stainless steel fittings must be used rather than brass or chrome which can be corroded by wine. Because of the specialized needs for the supply of draught wine, a distiller, wholesaler, winemaker or brewer is in a better position to determine and provide the proper equipment.
Therefore, as to the first question, a regulation permitting distillers, wholesalers, winemakers and brewers to supply the listed equipment at not less than cost would be permissible. Such a regulation would not violate the "tied house" concern and would not act as an unlawful inducement as the equipment would be provided at not less than cost and the retailer would have the option of purchasing the equipment from whomever he desired. Such a regulation would be similar to that found in the federal regulation, 27 CFR 6.89.
As to the second question, a similar analysis is applicable. One should note that installation of draught beer equipment is permitted under the Missouri regulation,11 CSR 70-2.040(1), and installation of draught equipment is also permitted under the federal regulation, 27 CFR 6.89. The installation of such equipment will not create a "tied house" problem because once the equipment is installed at a price not less than cost, the retailer would no longer be "tied" to the distiller, wholesaler, winemaker or brewer. Further, nothing would prevent the retailer from purchasing the equipment and installing it on his own. The installation would not act as an inducement because anyone who sold the equipment would be able to perform installations. Also, similar to the concern that the proper equipment be used, there is a concern that the equipment be installed properly. Many retailers do not have the technical expertise to install draught wine equipment. The result of poor or improper installation could be spoilage and contamination which would pose a threat to the public.
The final question concerning whether distillers, wholesalers, winemakers and brewers can lawfully provide draught wine coil cleaning service can also be answered in the affirmative. Such service is allowed in Missouri in the case of draught beer, 11 CSR 70-2.040(1), and a similar provision exists in the federal regulation, 27 CFR 6.97. Once again, the "tied house" problem, as well as the concern over inducements, is negated due to the fact that the retailer would not be obligated to procure such cleaning service as the retailer could clean the coils himself. Should the retailer elect to procure such service, he would have the option of choosing between any distiller, wholesaler, winemaker or brewer offering the cleaning service. Furthermore, the Supervisor of Liquor Control, by allowing distillers, wholesalers, winemakers or brewers to provide professional cleaning service would provide a means of insuring that draught wine is served in a safe and sanitary manner.
For the above reasons, we believe that a regulation would be permissible which would: (1) allow distillers, wholesalers, winemakers, brewers or their employees, officers, or agents to sell draught wine tapping accessories, such as standards, faucets, rods, vents, taps, tap standards, hoses, washers, couplings, gas gauges, vent tongues, shanks and check valves to licensed retailers in this state at a price not less than the cost to the distiller, wholesaler, winemaker or brewer who initially purchased them, for the purpose of dispensing draught wine; (2) allow distillers, wholesalers, winemakers, brewers, or their employees, officers or agents to install draught wine tapping accessories in the retailer's establishment; (3) allow distillers, wholesalers, winemakers, brewers or their employees, officers, or agents to lawfully provide draught wine coil cleaning service to licensed retailers.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General