Honorable Earl L. Schlef Representative, District 60 1672 Maldon Lane Dellwood, Missouri 63136
Dear Representative Schlef:
This opinion letter is issued in response to your request for a ruling on the following question:
 May a wholesaler licensed under the Liquor Control Laws of Missouri sell intoxicating liquor or nonintoxicating beer to a retail licensee who is delinquent in his accounts with any other wholesale licensee?
Section 311.070, RSMo 1969, provides that:
 "1. Distillers, wholesalers, wine makers, brewers or their employees, officers or agents, shall not, under any circumstances, directly or indirectly, have any financial interest in the retail business for sale of intoxicating liquors, and shall not, directly or indirectly, loan, give away or furnish equipment, money, credit or property of any kind, except ordinary commercial credit for liquors sold to such retail dealers." (Emphasis added)
Section 312.060, RSMo 1969, contains a like provision with respect to the malt beverage and nonintoxicating beer industry.
The liquor control statutes do not further define the term "ordinary commercial credit."
However, the Supervisor of Liquor Control, by Sections 311.660
(10) and 312.360(10), RSMo 1969, is empowered to make rules and regulations which are "necessary and feasible for carrying out the provisions" of the liquor control law and which are not inconsistent therewith. Pursuant to this authority, the Supervisor has established Regulation 1(e), which defines the phrase "ordinary commercial credit" as follows:
 "(1) Malt Beverages. Ordinary commercial credit as used in the malt beverage and nonintoxicating beer industry shall be credit on such terms as shall require payment to be made by the retail licensee by the last day of the month for malt beverages or nonintoxicating beer which is delivered to such retail licensee on or after the first (1) day of the month and up to and including the fifteenth (15) day of the month and by the fifteenth (15) day of the month next succeeding for malt beverages or nonintoxicating beer which is delivered to such retail licensee on or after the sixteenth (16) day of the month and up to and including the last day of the month. No brewer or wholesaler shall sell or deliver to any retail licensee any malt beverage or nonintoxicating beer while such retail licensee owes such brewer or wholesaler for any malt beverage or nonintoxicating beer beyond the period of time in this paragraph set forth.
 "(2) Intoxicating Liquor Other Than Malt Beverage. Ordinary commercial credit as used in the intoxicating liquor industry, other than the malt beverage industry, shall be credit on such terms as shall require payment to be made by the retail licensee within thirty (30) days after the delivery of any intoxicating liquor, other than malt beverage, to such retail licensee. No distiller, wholesaler or wine maker shall sell or deliver to any retail licensee any intoxicating liquor, other than malt beverage, while such retail licensee owes such distiller, wholesaler, or wine maker for any intoxicating liquor, other than malt beverage, beyond the period of time in this paragraph set forth."
The above-quoted regulation clearly prohibits any wholesaler from selling to a retailer who does not make timely payment to such wholesaler but does not, by its terms, prohibit a wholesaler from selling to a retailer whose accounts are delinquent with any other wholesaler.
Accordingly, the only question remaining is whether the regulation constitutes a proper exercise of the Supervisor's rule-making authority. As noted above, no definition of the term "ordinary commercial credit" is found in the liquor control law, nor have any cases been found which interpret the term. It is the opinion of this office, however, that the use of that term does not, perforce, prohibit a wholesaler from selling to a retailer who is in debt to any other wholesaler. This opinion is supported by the following factors:
First, the term "ordinary commercial credit" is used in Section311.070 in a context which evidences a legislative intent to prevent financial control of retailers by wholesalers. As stated in Brown-Forman Distillers Corporation v. Stewart, 520 S.W.2d 1, 7
(Mo. Banc 1975), citing Section 311.070:
 "The . . . [Liquor Control] statutes indicate a legislative intent to preclude a licensee in one phase of the liquor traffic from controlling other separate and distinct phases of the liquor traffic, thereby controlling traffic in liquor in its entirety. . . ."
Additionally, the remaining paragraphs of Section 311.070 provide the following:
 "2. Any distiller, wholesaler, wine maker or brewer who shall violate the above provisions of this section, or permit his employees, officers or agents to do so, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished as follows:
 (1) For the first offense, by a fine of one thousand dollars;
 (2) For a second offense, by a fine of five thousand dollars; and
 (3) For a third offense, the license of said person shall be revoked.
 "3. All contracts entered into between distillers, brewers and wine makers, or their officers or directors, in any way concerning any of their products, obligating such retail dealers to buy or sell only the products of any such distillers, brewers or wine makers or obligating such retail dealers to buy or sell the major part of such products required by such retail vendors from any such distiller, brewer or wine maker, shall be void and unenforceable in any court in this state."
It appears, therefore, that Section 311.070 was aimed primarily at preventing a wholesaler from becoming financially interested in a retail operation. Reading the statute as a whole, there is no indication that the use of the term "ordinary commercial credit" was intended to force retailers to keep all their accounts current.
Secondly, the implementation of a law prohibiting a wholesaler from selling to a retailer in debt to any other wholesaler would necessarily require wholesalers to provide regular reports of their delinquent accounts for distribution to other wholesalers. The liquor control statutes require wholesalers to submit several different monthly reports (see, e.g., Sections 311.370, 311.334, 311.336, and 312.170) containing such information as current price schedules and amounts of liquor stored. But there is no like provision for the reporting of delinquent retail accounts. The absence of such a reporting requirement indicates that the legislature did not consider universally current accounts as a prerequisite to the selling and purchasing of liquor or beer.
Finally, in Passler v. Johnson, 304 S.W.2d 903 (Mo. 1957), the Missouri Supreme Court had an opportunity to review a Kansas City ordinance which provided for the regular reporting of delinquent accounts and which expressly prohibited a wholesaler from selling to a retailer who was delinquent with any other wholesaler. The precise issue decided in Passler was that the Kansas City ordinance was consistent with state law, the court holding that the ordinance was an "additional requirement" and an "enlargement" of the prohibition contained in Section 311.070. The court said, l.c. 907:
 "Thus, it is apparent that under the state law a Kansas City retailer, even though indebted to a particular wholesaler beyond the time of the credit limits specified in regulation 1(g), could, nevertheless, purchase either for cash or on `ordinary commercial credit' from another wholesaler and from successive other wholesalers so long as he could find a willing new one. . . ."
It is, therefore, our view that the promulgation of Liquor Control Regulation 1(e), which defines "ordinary commercial credit," is a proper exercise of the Supervisor of Liquor Control's rule-making powers and that a wholesaler licensed under the liquor control laws may sell intoxicating liquor and nonintoxicating beer to a retail licensee who is delinquent in his accounts with another licensee insofar as the state liquor law is concerned.
Yours very truly,
 JOHN C. DANFORTH Attorney General